STATE OF NORTH CAROLINA v. CHARLES EDWARD McCOY

No. COA95-918

(Filed 21 May 1996)

## 1. Homicide § 361 (NCI4th)— manslaughter premised on acting in concert—lesser offense of second-degree murder

There was no merit to defendant's contention that voluntary manslaughter cannot be a lesser included offense of second-degree murder when premised on the doctrine of acting in concert.

**Am Jur 2d, Homicide § 216.**

**Propriety of manslaughter conviction in prosecution for murder, absent proof of necessary elements of manslaughter. 19 ALR4th 861.**

## 2. Homicide §§ 319, 329 (NCI4th)— voluntary manslaughter—involuntary manslaughter—sufficiency of evidence

The evidence was sufficient to be submitted to the jury on the charges of voluntary manslaughter and involuntary manslaughter where it tended to show that defendant and his accomplice drove to the victim's house armed with deadly weapons which defendant supplied; upon arrival at the house, defendant parked his car down the street, hid from view, and instructed the accomplice to lure the victim out of the house; when the victim exited the house both defendant and his accomplice fired on him as he attempted to dodge the gunfire by running into the bushes; defendant intentionally fired his weapon into the bushes; and defendant and his accomplice left the scene and went to another person's house where defendant admitted that they had killed the victim.

**Am Jur 2d, Homicide § 425.**

Appeal by defendant from judgment entered 23 March 1995 by Judge Chase B. Saunders in Mecklenburg County Superior Court. Heard in the Court of Appeals 17 April 1996.

*Attorney General Michael F. Easley, by Special Deputy Attorney General John R. Corne and Associate Attorney General Bruce S. Ambrose, for the State.*

*Richard H. Tomberlin for defendant-appellant.*

MARTIN, Mark D., Judge.

Defendant Charles Edward McCoy appeals from conviction on one count of voluntary manslaughter.

At trial, the State's evidence tended to show the following: In the early morning hours of 22 June 1992, Arthur Springs (Springs), the deceased, allegedly assaulted Ginette McCoy (McCoy), defendant's sister. Later that same morning, after learning of the incident, defendant and a companion named Elbow drove to Springs' house. Defendant armed himself with a .45 caliber automatic handgun and armed Elbow with a .357 caliber handgun. Upon arrival at Springs' residence, defendant parked the car down the street; hid behind a bush; and instructed Elbow to "go to the door to get [Springs] outside."

Shortly after 2:45 a.m., Elbow knocked on the front door of the house. Springs opened the door and stepped onto the front porch. As Elbow was talking to Springs, defendant emerged from behind the bush. Defendant watched Elbow draw the .357 caliber handgun and fire three to four shots at Springs. Springs ran toward some bushes near the side of the house while Elbow continued to shoot in Springs' direction.

Defendant saw Springs near the bushes and fired two shots into the bushes where Springs had fled. Defendant alleges he shot at the base of the bushes. Patricia McClelland (McClelland) testified defendant told her he shot at the bushes. After firing two additional shots into the air, defendant's gun jammed and he stopped shooting. Springs ran to the front of the house with his hands over his bloody chest. Springs looked at defendant and stated, "Coon, why did you do this?" Springs entered the front door of his house, collapsed on the floor, and died.

Defendant and Elbow left the scene together and went to McClelland's house, where defendant said, "we killed the mother-f———." Later that same day, defendant disposed of both weapons by throwing them into a river in South Carolina.

Defendant told investigating officers he did not know whether he or Elbow shot Springs but that Elbow fired from a closer range. Defendant also told the investigators his intention was to "kick [Springs'] ass" and the guns were only for self-protection.

An autopsy disclosed two bullet wounds, one of which entered Springs' back, pierced a lung, and grazed his heart before exiting his chest cavity; the other entered through the rear flank area and passed through several internal organs before exiting through the abdominal wall. Dr. Robert Thompson, the medical examiner who performed the autopsy, testified Springs died from both gunshot wounds. Dr. Thompson further testified that the bullet which entered Springs' back was the immediate cause of death and was probably fired from a large caliber gun.

Police officers recovered four .45 shell casings from the edge of the street near Springs' house, four .45 caliber bullets from Springs' front yard, and one bullet from either a .357 magnum or .38 special from the front wall of the house.

At the close of the State's evidence, defendant made a motion to dismiss the case which the trial court denied. Defendant did not present any evidence. The trial court instructed the jury on the charges of second degree murder, voluntary manslaughter, and involuntary manslaughter.

At the conclusion of trial, the jury found defendant guilty of voluntary manslaughter and the trial court imposed an active sentence of seventeen years.

[1] On appeal defendant contends the trial court erred by allowing the jury to find defendant guilty of voluntary manslaughter. Specifically, defendant argues that voluntary manslaughter cannot be a lesser included offense of second degree murder when premised on the doctrine of acting in concert. We disagree.

At the outset we note defendant fails to cite any authority to support his proposition that the doctrine of acting in concert is inapplicable to voluntary manslaughter. In any event, it is well established the doctrine is applicable when the State presents "sufficient evidence that two or more persons acted together with a common plan to commit a crime," *State v. Moxley*, 78 N.C. App. 551, 555, 338 S.E.2d 122, 124 (1985), *disc. review denied*, 316 N.C. 384, 342 S.E.2d 904 (1986), and has been applied to voluntary manslaughter and involuntary manslaughter, *see, e.g., id.* (voluntary manslaughter), *State v. Robinson*, 83 N.C. App. 146, 148-149, 349 S.E.2d 317, 319 (1986) (involuntary manslaughter).

Defendant's reliance on *State v. Blankenship*, 337 N.C. 543, 447 S.E.2d 727 (1994), is wholly misplaced. In *Blankenship* our Supreme Court concluded:

> [O]ne may not be criminally responsible under the theory of acting in concert for a crime like premeditated and deliberated murder, which requires a specific intent, unless he is shown to have the requisite specific intent.

*Id.* at 558, 447 S.E.2d at 736. Because the *Blankenship* rule does not apply to general intent crimes, and voluntary manslaughter is a general intent crime, *State v. Clark*, 324 N.C. 146, 164, 377 S.E.2d 54, 65 (1989), defendant's contention is meritless.

**[2]** Defendant next contends the trial court erred by denying his motion to dismiss the charges of voluntary manslaughter and involuntary manslaughter because the evidence was insufficient to prove defendant fired the shot which killed Springs. We again disagree.

In ruling on a motion to dismiss, "the trial court must view all the evidence . . . in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from it . . . ." *State v. Abraham*, 338 N.C. 315, 328, 451 S.E.2d 131, 137 (1994). If there is substantial evidence of the essential elements of the offense charged, or of a lesser included offense, and of defendant being the perpetrator, "the trial court must deny the motion to dismiss . . . and submit [the charges] to the jury . . . ." *State v. McAvoy*, 331 N.C. 583, 589, 417 S.E.2d 489, 493 (1992).

Voluntary manslaughter is the unlawful killing of a human being without malice. *State v. Mathis*, 105 N.C. App. 402, 405, 413 S.E.2d 301, 303-304, *disc. review denied*, 331 N.C. 289, 417 S.E.2d 259 (1992). Involuntary manslaughter, on the other hand, is defined as the " 'unintentional killing of a human being without malice, proximately caused by . . . a culpably negligent act or omission.' " *State v. Lane*, 115 N.C. App. 25, 28, 444 S.E.2d 233, 235 (*quoting State v. McGill*, 314 N.C. 633, 637, 336 S.E.2d 90, 92 (1985)), *disc. review denied*, 337 N.C. 804, 449 S.E.2d 753 (1994).

In the instant action, the State's evidence tended to show defendant and his accomplice drove to Springs' house armed with deadly weapons. Defendant supplied the weapons. Upon arrival at Springs' house, defendant parked his car down the street; hid from view; and instructed Elbow to lure Springs out of the house. After Springs exited the house, both defendant and Elbow fired on Springs as he

**MORTENSEN v. MAGNETI MARELLI U.S.A.**

[122 N.C. App. 486 (1996)]

attempted to dodge the gunfire by running into nearby bushes. Defendant intentionally fired his .45 caliber handgun into the bushes where Springs had fled. Defendant and Elbow left the scene together and proceeded to McClelland's house where defendant admitted the pair had killed Springs. A police technician later recovered four .45 shell casings from the edge of the street near the house and four .45 caliber bullets on the other side of the yard from the cartridge casings.

Taken in the light most favorable to the State, substantial evidence was introduced from which the jury could reasonably infer that defendant and his accomplice were acting pursuant to a common plan or purpose or, alternatively, that defendant's solitary acts resulted in Springs' death. Accordingly, the trial court did not err by denying defendant's motion to dismiss.

Finally, defendant's remaining assignment of error which he failed to bring forward or argue in his brief is deemed abandoned pursuant to N.C.R. App. P. 28(b)(5).

No error.

Judges GREENE and JOHN concur.