STATE OF NORTH CAROLINA, PLAINTIFF v. SHERMAN WHITE, DEFENDANT

No. COA96-1489

(Filed 4 November 1997)

### 1. Appeal and Error § 212 (NCI4th)— extension of time for taking appeal—trial court without authority

The trial court exceeded its authority by entering an order extending the time for taking an appeal. N.C. R. App. P. 27(c).

### 2. Kidnapping and Felonious Restraint § 2 (NCI4th)— continuing offense

The offense of kidnapping under N.C.G.S. § 14-39 is a single continuing offense lasting from the time of the initial unlawful confinement, restraint or removal until the victim regains his or her own free will. Therefore, each place of confinement or each act of asportation occurring during a kidnapping does not constitute a separate unit of prosecution.

### 3. Kidnapping and Felonious Restraint § 16 (NCI4th)— one act of kidnapping—erroneous submission of three counts

Defendant committed only one act of kidnapping which encompassed the period beginning when a codefendant removed the victim from her vehicle until the victim was released in a motel parking lot, and the trial court improperly submitted three separate counts of kidnapping to the jury, even though sentence was imposed for only one count.

### 4. Constitutional Law § 200 (NCI4th)— double jeopardy— first-degree kidnapping and underlying sexual assault

Imposition of separate punishments on a defendant for the offenses of first-degree kidnapping and the underlying sexual assault on which the first-degree kidnapping charge was based violates the double jeopardy clauses found in U.S. Const. amend. V and N.C. Const. art. I, § 19.

### 5. Kidnapping and Felonious Restraint § 14 (NCI4th)— release in safe place

A kidnapping victim was released in a "safe place" at the end of her confinement so that the place of her release could not elevate the crime to first-degree kidnapping where the victim was voluntarily dropped off in a motel parking lot in the middle of the

STATE v. WHITE

[127 N.C. App. 565 (1997)]

afternoon, was given change to make a phone call, and was able to go the motel office to seek assistance.

**6. Rape and Allied Sexual Offenses § 27 (NCI4th)— first-degree sexual offense—aiding and abetting—sufficient evidence**

The evidence supported defendant's conviction of first-degree sexual offense by aiding and abetting a codefendant's penetration of the victim's vagina with his fingers while in defendant's vehicle where it tended to show that defendant had made a lewd comment to a female restaurant employee just minutes before his vehicle collided with the victim's vehicle; after the collision, the codefendant forced the victim into the back seat of defendant's vehicle; defendant repeatedly reached over the seat while he was driving and hit the victim in the head; both defendant and the codefendant drove the victim from place to place, discussed killing her, and eventually raped her; after the codefendant took the victim to his house, defendant twice visited the house; and both men subsequently removed the victim from the house and released her in a motel parking lot.

Judge WALKER concurring.

Appeal by defendant from judgments entered 16 June 1994 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 16 September 1997.

*Attorney General Michael F. Easley, by Assistant Attorney General Mary D. Winstead, for the State.*

*Glover & Petersen, P.A., by Ann B. Petersen, for defendant appellant.*

SMITH, Judge.

The State's evidence tended to show the following: On 14 April 1993, the victim worked the late shift at Bennigan's Restaurant in Greensboro and left the restaurant at approximately 2:30 a.m. on 15 April 1993. While stopped at a traffic light on South Chapman Street, a speeding vehicle approached from the rear and collided with her vehicle. Someone yelled, "[a]re you all right?" and directed her to pull over in order to call the police. After pulling into a parking lot, one of the occupants of the other vehicle, who was later identified as Vernon Easterling ("Easterling"), got out and looked at the damage to both

vehicles. Easterling approached the victim's vehicle and the victim rolled her window down slightly. He asked if she was all right, and as she turned to look at him, he punched her in the jaw, knocking her into the passenger seat. The next thing she remembered, Easterling was choking her and hitting her head against the passenger seat. The victim attempted to escape through the passenger door, but Easterling pulled her by the hair back into the vehicle, across the console and emergency brake and out onto the parking lot. He then dragged her across the parking lot into the rear floorboard of the vehicle that had hit her vehicle.

The driver of the vehicle, who was later identified as defendant, told her to shut up or he would shoot her, and asked her where her money was. She looked up and saw he had her purse which she had placed in the backseat of her vehicle before she left work. Defendant and Easterling looked through her wallet which contained an ATM card and $9.00. Defendant said he wanted to take the victim to the bank in order to get money from an ATM machine. The victim told them she did not have any money in the bank and that she had surpassed her limit on her credit cards. Because she feared for her life, she offered them her paycheck which was in her pocket. Easterling took her paycheck and he and defendant decided to take her to cash it.

While defendant drove the vehicle, Easterling rode in the backseat with the victim. During this time, defendant reached over the backseat and hit her repeatedly, telling her to shut up or he would kill her. Easterling, who also hit and kicked her, repeatedly inserted his fingers in her vagina and fondled her breasts.

Because the victim was extremely upset, defendant and Easterling decided against cashing her paycheck. Easterling suggested taking her to Heath Park. When they arrived there, Easterling pulled the victim out of the vehicle and tied her wrists behind her back. Defendant and Easterling walked her down a hill and threw her to the ground. They tied her hands and feet with her suspenders and told her it was her own fault. They then walked a few feet away and discussed killing her and moving her vehicle. As they finished their conversation, a truck approached. They untied her feet, put her back in defendant's vehicle, and proceeded to drive to another park. When they arrived at the second park, Easterling took the victim out of the vehicle and down a hill. He threw her to the ground, tore her clothes off and put his tongue in her vagina. He then had forcible sexual inter-

course with her. At the same time, defendant was kneeling on top of her and trying to force her to perform oral sex on him. When Easterling finished, he held her down while defendant placed his tongue and then his penis in her vagina.

When defendant finished, they again shoved the victim into the floorboard of the rear passenger seat of defendant's vehicle and started to drive, arguing about what to do with her. Defendant began driving fast and said he was going to kill all of them. The vehicle ran into something, and Easterling told defendant to stop. Easterling pulled the victim out of the vehicle and took her to his house, where he repeatedly raped and beat her. Defendant went to Easterling's house twice, the second time at approximately 11:00 a.m. While the victim pretended to sleep, defendant and Easterling discussed what they were going to do with her. Later, the three of them watched the news, which aired a story about the victim's disappearance. The two men eventually agreed to release the victim if she agreed to tell authorities she had not seen her assailants. Easterling gave her baggy clothes and sunglasses to disguise her as they left the house, and he also gave her a quarter to make a phone call. The three of them got into defendant's vehicle and drove to the Economy Inn Motel. Defendant and Easterling released the victim in the back parking lot of the motel at approximately 2:30 p.m.

The State's evidence also tended to show that, on the night of 14 April 1993, Ms. Deborah McDonald was employed at New York Pizza, a bar in Greensboro. As she was closing the bar at approximately 2:35 a.m. on 15 April 1993, she attempted to lock the back door but someone pulled it open. She told the person he needed to go and he repeatedly said, "[s]ee you later." He then said, "[y]ou know you won't say '[s]ee you later,' because I'll go all up in you and make you come." McDonald walked away from the door and told her coworker to get the person away from the door. Her coworker locked the door and they thereafter left the building. As McDonald drove home, she stopped for a red light at the intersection of Chapman and Spring Garden Streets. She saw two vehicles on Chapman Street that were positioned to turn onto Spring Garden Street but were stopped at the green light. She saw the same man who had spoken to her while she was closing New York Pizza standing at the driver's side of the front vehicle. As McDonald drove off, she saw the two vehicles pull into a parking lot. McDonald later identified the person she had seen at New York Pizza and at the intersection as defendant.

Defendant was charged with armed robbery, two counts of first degree rape, three counts of first degree sexual offense and three counts of first degree kidnapping. The first count of kidnapping charged defendant with confining the victim in his vehicle at the intersection of Spring Garden and Chapman Streets for the purpose of facilitating the commission of robbery and not releasing her in a safe place. The second count of kidnapping charged defendant with removing the victim from the intersection to a park for the purpose of facilitating the commission of rape or sexual offenses and sexually assaulting the victim and not releasing her in a safe place. The third count of kidnapping charged defendant with removing the victim from the park to Easterling's residence for the purpose of facilitating the commission of rape or sexual offenses and sexually assaulting the victim and not releasing her in a safe place.

On 16 June 1994, defendant was convicted by a jury of robbery, two counts of first degree rape, two counts of first degree sexual offense, and three counts of first degree kidnapping. The trial court arrested judgment on Counts I and III of the first degree kidnapping charges. Defendant was sentenced to four consecutive terms of life imprisonment for the two counts of first degree rape and two counts of first degree sexual offense. He was also sentenced to forty years' imprisonment for the first degree kidnapping and ten years' imprisonment for common law robbery.

On appeal, defendant first contends the trial court erred by denying his motion to submit only a single count of kidnapping to the jury. Defendant argues that the kidnapping was a single, continuing offense, and that arresting judgment on counts I and III of the kidnapping charges was insufficient to cure the prejudice arising from the submission of three counts of kidnapping.

[1] We first note that defendant's appeal was not perfected within the times prescribed by our Rules of Appellate Procedure. The record contains an order entered by the trial court on 12 September 1996 allowing defendant to appeal as of right from the judgments and sentences imposed on 16 June 1994. According to N.C.R. App. P. 27(c), "[c]ourts may not extend the time for taking an appeal . . . ." The trial court thus exceeded its authority in entering such an order. However, we choose to suspend the Rules pursuant to N.C.R. App. P. 21(a)(1) and treat the appeal as before us on a writ of certiorari. *See Anderson v. Hollifield*, 345 N.C. 480, 482, 480 S.E.2d 661, 663 (1997) (holding that this Court could review the merits of an appeal by certiorari even if the party failed to file notice of appeal in a timely manner).

We now turn to the propriety of the trial court submitting three separate counts of kidnapping to the jury, rather than one, an issue of first impression in this jurisdiction. N.C. Gen. Stat. § 14-39 (1993) states in pertinent part:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

\* \* \* \*

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or

(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person.

\* \* \* \*

(b) There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class D felony. If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony.

N.C. Gen. Stat. § 14-39 contains no express language delineating each act of confinement, restraint or removal during a kidnapping as a separate unit of prosecution. Our Supreme Court has held that, if the General Assembly fails to establish with clarity the precise unit of prosecution for a particular crime, the statute defining such crime must be strictly construed against the State. *State v. Smith*, 323 N.C. 439, 444, 373 S.E.2d 435, 438 (1988).

[2] If we interpret N.C. Gen. Stat. § 14-39 to mean that each place of confinement or each act of asportation occurring during a kidnapping constitutes a separate unit of prosecution, the State would then be authorized to divide a single act of confinement into as many counts of kidnapping as the prosecutor could devise. For example, in the instant case, the State could have charged defendant with several additional counts of kidnapping, including one for restraining the victim in her vehicle, one for moving her from her vehicle to defendant's

vehicle, one for transporting her to the first park, and so on. Surely this is not what the General Assembly intended. Common sense dictates that the offense of kidnapping should encompass the entire period of a victim's confinement from the time of the initial act of restraint or confinement until the victim's free will is regained.

We therefore hold that the offense of kidnapping under N.C. Gen. Stat. § 14-39 is a single continuing offense, lasting from the time of the initial unlawful confinement, restraint or removal until the victim regains his or her free will. This interpretation accords with the law of other jurisdictions and what we construe to be the intent of our legislature. *See State v. Jefferies*, 403 S.E.2d 169, 172 (S.C. Ct. App. 1991), *vacated on other grounds*, 503 U.S. 931, 117 L. Ed. 2d 611 (1992) ("kidnapping is a continuing offense as long as the kidnapped person is deprived of his freedom"); *People v. La Marca*, 144 N.E.2d 420, 424-25, *modified on other grounds*, 145 N.E.2d 892 (N.Y. 1957), *cert. denied*, 355 U.S. 920, 2 L. Ed. 2d 279 (1958) ("[k]idnapping, which involves the detention of another, is, by its nature, a continuing crime"); *State v. Zimmer*, 426 P.2d 267, 286 (Kan. 1967), *cert. denied*, 389 U.S. 933, 19 L. Ed. 2d 286 (1967) ("[k]idnapping, which involves the detention of another, is a continuing offense"); *Kemple v. State*, 725 S.W.2d 483, 485 (Tex. Ct. App. 1987) ("[k]idnapping is a 'continuing offense.' The abduction does not 'occur' at only one time, but rather is a continuous, ongoing event.")

**[3]** In the instant case, we conclude that defendant committed one act of kidnapping, which encompassed the period beginning when Easterling removed the victim from her vehicle until she was released in the motel parking lot. The trial court therefore improperly submitted three separate counts of kidnapping to the jury, even though sentence was imposed for only one.

**[4]** The jury found with respect to Count II, which charged defendant with removing the victim from the intersection to a city park for the purpose of facilitating rape or sexual offenses, that the victim was not released in a safe place and that she was sexually assaulted in the course of the kidnapping. While either of these findings would be sufficient to support a conviction of first degree kidnapping under N.C. Gen. Stat. § 14-39(b), it is well-settled that a defendant cannot be separately punished for the offenses of first degree kidnapping and the underlying sexual assault on which the first degree kidnapping charge is based, as such punishment violates the double jeopardy clauses found in U.S. Const. amend. V and N.C. Const. art. I, § 19. *State v. Freeland*, 316 N.C. 13, 21, 340 S.E.2d 35, 39 (1986). Thus, in

the trial court, defendant's sentence for first degree kidnapping rested on the validity of the jury's additional finding that the victim was not released in a safe place.

[5] To support his contention that arresting judgment on Counts I and III did not cure the harm resulting from the submission of the three counts to the jury, defendant argues that, by submitting the three counts, the trial court allowed the State to create the element of failure to release the victim in a safe place for each count, causing the jury to focus on arbitrary points during the victim's confinement, rather than her ultimate release at the motel. Defendant also argues that despite the fact the jury found the victim was not released in a safe place with respect to Count III, which charged defendant with removing the victim from a city park to Easterling's house, the evidence presented was insufficient to establish that defendant did not release the victim in a safe place at the end of her confinement.

As mentioned above, the offense of kidnapping committed by defendant was a single, continuous offense which occurred from the time the victim was removed from her vehicle until she was released in the motel parking lot. Thus, for the purpose of determining whether or not the victim was released in a safe place, the jury should have focused on her ultimate release in the motel parking lot, and not any prior time.

In deciding whether sufficient evidence was presented from which the jury could reasonably infer that the victim was not released in a safe place, we consider the evidence in the light most favorable to the State, giving the State every reasonable inference to be drawn therefrom. *State v. Jerrett*, 309 N.C. 239, 263, 307 S.E.2d 339, 352 (1983). In support of its argument that the victim was not released in a safe place, the State cites *State v. Heatwole*, 333 N.C. 156, 423 S.E.2d 735 (1992), where our Supreme Court found that a victim who had been released to the police had not been released in a safe place. In that case, defendant removed the victim from her house to his parents' house, shooting several people in the process. *Id.* at 159, 423 S.E.2d at 736-37. When ten law enforcement officers surrounded the front door with guns drawn, defendant released the victim by sending her out of the house. *Id.* at 159, 423 S.E.2d at 737. Defendant then exited the house, laid down, and was arrested. *Id.* Our Supreme Court held that "releasing a kidnap victim when the kidnapper is aware he is cornered and outnumbered by law enforcement officials is not 'voluntary' and that sending [the victim] out into the focal point of their weapons is not a 'safe place.' " *Id.* at 161, 423 S.E.2d at 738.

**STATE v. WHITE**

[127 N.C. App. 565 (1997)]

The facts in *Heatwole* are easily distinguished from those of the instant case. Here, the evidence establishes that the victim was taken to a motel near a major shopping center in the middle of the afternoon, and was given change to make a phone call after her release. She was voluntarily dropped off in the motel parking lot, and was able to go directly to the motel office and seek assistance. She received assistance from employees working in the office and remained there until her roommate and apartment manager picked her up. The State has not shown that defendant and Easterling released the victim under coercion or threat from law enforcement, or that the victim was released under dangerous conditions similar to those found in *Heatwole*. Thus, all the evidence established that the victim was released in a safe place.

Since all the evidence presented showed the victim was released in a safe place, the sole basis on which defendant's conviction of first degree kidnapping could rest is that of a sexual assault during the kidnapping. *See* N.C. Gen. Stat. § 14-39(b). Though defendant is not entitled to a new trial on the kidnapping charge because the victim was sexually assaulted during the kidnapping, he cannot be separately convicted and sentenced for both first degree kidnapping and the underlying sexual assault without violating U.S. Const. amend. V and N.C. Const. art. I, § 19. It is therefore necessary to vacate the judgments and sentences for the two counts of first degree rape, two counts of first degree sexual offense and first degree kidnapping and remand this case to the trial court for resentencing. *See Freeland*, 316 N.C. at 23-24, 340 S.E.2d at 41. The trial court may arrest judgment on defendant's remaining first degree kidnapping conviction and resentence for second degree kidnapping and the four sexual assaults, or it may arrest judgment on one of the sexual assault convictions and resentence for first degree kidnapping and the remaining three sexual assaults. *See id.* at 24, 340 S.E.2d at 41. This would remove any and all prejudice defendant suffered by virtue of the improper submission of three counts of kidnapping.

**[6]** In his second assignment of error, defendant contends the trial court erred by denying his motion to dismiss the charge of first degree sexual offense by aiding and abetting Easterling in the sexual assault consisting of Easterling's penetration of the victim's vagina with his fingers. When ruling on a motion to dismiss, the trial court must view the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom. *State v. McCoy*, 122 N.C. App. 482, 485, 470 S.E.2d 542, 544,

**STATE v. WHITE**

[127 N.C. App. 565 (1997)]

*disc. review denied,* 343 N.C. 755, 473 S.E.2d 622 (1996). If substantial evidence of the essential elements of the crime charged and of defendant being the perpetrator exists, the trial court must deny the motion. *Id.*

Defendant argues the State failed to present substantial evidence that he knowingly aided Easterling in the first degree sexual offense that occurred in his car. In order to prove a defendant has aided and abetted another, the State must show: "(1) that the crime was committed by another; (2) that the defendant knowingly advised, instigated, encouraged, procured, or aided the other person; and (3) that the defendant's actions or statements caused or contributed to the commission of the crime by the other person." *State v. Bond,* 345 N.C. 1, 24, 478 S.E.2d 163, 175 (1996), *reh'g denied,* 345 N.C. 355, 479 S.E.2d 210, *cert. denied,* —— U.S. ——, 138 L. Ed. 2d 1022 (1997) (citing *State v. Francis,* 341 N.C. 156, 161, 459 S.E.2d 269, 272 (1995). "That a person intends to aid the perpetrator may be inferred from his actions and from his relation to the actual perpetrator." *State v. Penland,* 343 N.C. 634, 650, 472 S.E.2d 734, 743 (1996), *cert. denied,* —— U.S. ——, 136 L. Ed. 2d 725, *reh'g denied,* —— U.S. ——, 137 L. Ed. 2d 366 (1997).

Here, the evidence established that just a few minutes before defendant's vehicle collided with the victim's vehicle, defendant appeared at the back door of New York Pizza and made lewd comments to one of its employees. After Easterling forced the victim into defendant's vehicle, defendant repeatedly reached over the seat while he was driving and hit her in the head. Both defendants drove the victim from place to place, discussed killing her, and eventually raped her. After Easterling took the victim to his house, defendant visited Easterling's house twice, and both men subsequently removed the victim from the house and released her in the motel parking lot. The evidence presented leads to the inescapable conclusion that defendant and Easterling acted together during the victim's confinement. Because the State presented substantial evidence to support the charge of first degree sexual offense by aiding and abetting Easterling in the sexual assault that occurred in defendant's vehicle, the trial court properly denied defendant's motion to dismiss.

We have carefully reviewed defendant's remaining assignment of error and find it to be without merit.

In No. 93 CrS 20505, common law robbery, no error.

The sentences in No. 93 CrS 33228, Count II of first degree kidnapping; No. 93 CrS 20506, Counts III and V of first degree sexual offense; and No. 93 CrS 20506, Counts I and II of first degree rape are vacated and remanded for resentencing.

Judge WYNN concurs.

Judge WALKER concurs in a separate opinion.

Judge WALKER concurring.

The question of whether the victim was "not released in a safe place" is ordinarily an issue of fact for the jury. In this case, however, I agree with defendant's contention that by submitting three counts of kidnapping, "the State creat[ed] the element of failure to release in a safe place for each count, causing the jury to focus on arbitrary points during the victim's confinement, rather than her ultimate release at the motel." This was especially true, as Count III of the kidnapping indictment charged, "he [defendant] did remove her [the victim] from a city park in the northeast section of Greensboro, N.C. to a home located at 2005 Lutheran Street . . .," but did not mention that the victim was ultimately released in the parking lot of a motel. As such, I conclude there was insufficient evidence for a jury to find the victim was not released in a safe place; therefore, the defendant should not have been sentenced for a crime greater than second degree kidnapping.