

# Fourth Court of Appeals
## San Antonio, Texas

### DISSENTING OPINION

No. 04-13-00789-CR

John Christopher **DOMINGUEZ**,
Appellant

v.

The
The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2013CR3592
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice
Dissenting Opinion by:  Rebeca C. Martinez, Justice

Sitting:    Rebeca C. Martinez, Justice
            Patricia O. Alvarez, Justice
            Luz Elena D. Chapa, Justice

Delivered and Filed:  March 25, 2015

The Legislature saw fit to mitigate the punishment in aggravated kidnappings where the defendant voluntarily releases his victim in a safe place.  A victim is released when she realizes that she is freed from captivity.  In this case, both the victim's testimony that the defendant was "gone" and her actions in telephoning her sister to pick her up and then leaving the motel clearly reflect her realization that she was freed from captivity.  Because the majority completely ignores the victim's testimony and actions and instead erroneously views the evidence regarding "release" solely from the defendant's perspective, I respectfully dissent.

***Evidence at Trial***

Dominguez and sixteen year-old D.P. met while chatting on Facebook in late 2012. Facebook messages admitted into evidence showed that Dominguez told D.P. that he would take her shopping and buy her a cell phone and clothes. D.P. told Dominguez that she would be his "sugar baby." On January 18, 2013, D.P. agreed to let Dominguez pick up her and a friend and together they all went to the mall.

D.P. testified that two days later she agreed to let Dominguez pick her and a friend up from a post office near her friend's house. Before he picked her up, D.P. messaged Dominguez and told him, "Oh but one thing i needa say, i dont give head and i dont do anal[;] and I rarely kiss on the mouth." After some time passed, Dominguez drove the girls to a motel where he sexually assaulted D.P. D.P. testified that after the assault, she joined her friend in the bathroom and locked the door. She testified that Dominguez knocked on the bathroom door and told her that he was leaving. It is undisputed that Dominguez then left the motel. D.P. testified that after Dominguez left, she fell asleep in the bathroom for about 30 minutes. Once she awoke, D.P. exited the bathroom and began making calls on the telephone located in the motel room. She was able to reach her sister, who agreed to come pick up her and her friend. D.P. did not know where the motel was located, so her sister instructed her to go outside and look for the nearest intersection. D.P. went to the motel's front office to ask for directions, but no one was there. D.P. returned to the motel room and told her sister she was going to walk to a nearby restaurant. D.P. and her friend then walked to a Pizza Hut and again called her sister from the restaurant's telephone. Twenty minutes later, her sister arrived at the Pizza Hut.

Approximately five or six days later, Dominguez was questioned by the police. In the interview, Dominguez stated that on the day in question, he had an appointment to "get" plasma;

Dominguez indicated the process takes about two hours. He told the officer he could not take the girls with him to the plasma center, so he told the girls to stay in the motel room unless they wanted to wait in his car for two hours at the plasma center. He told the girls that he would bring back some food, and he said he called the room twice to ask what they wanted to eat. Dominguez stated that he was surprised when he returned to find the girls gone.

The trial court denied Dominguez's request to make a finding of voluntary safe release, and instead assessed punishment within the first degree felony range, stating: "So I will refrain from making the finding that [defense counsel] has asked. That is an appellate point." Dominguez does not challenge on appeal the kidnapping or sexual assault charge.

***Burden of Proof and Applicable Law***

In reviewing the evidence presented at trial, I am mindful that Dominguez was required to prove that he (1) voluntarily (2) released D.P. in a (3) safe place by a preponderance of the evidence, which is a lesser burden of proof than the "beyond a reasonable doubt" criminal burden of proof. *See* TEX. PENAL CODE ANN. § 20.04(d) (West 2011); *Hacker v. State*, 389 S.W.3d 860, 864-65 (Tex. Crim. App. 2013); *Posey v. State*, 966 S.W.2d 57, 63 (Tex. Crim. App. 1998). To satisfy this burden, the "greater weight of the credible evidence" must create a "reasonable belief" that the defendant voluntarily released the victim in a safe place. *See Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974). In addressing sufficiency of the evidence to support an adverse finding on an affirmative defense, the Court of Criminal Appeals has recently directed,

> [i]n a legal-sufficiency review of an affirmative defense, reviewing courts should first assay the record for a scintilla of evidence favorable to the factfinder's finding and disregard all evidence to the contrary unless a reasonable factfinder could not. *See Matlock v. State*, 392 S.W.3d 662, 669-670 (Tex. Crim. App. 2013). The finding of the factfinder rejecting a defendant's affirmative defense should be overturned for lack of legal sufficiency only if the appealing party establishes that the evidence conclusively proves his affirmative defense, and 'no reasonable [factfinder] was free to think otherwise.' *Id.* at 670.

> In a factual-sufficiency review of a finding rejecting an affirmative defense, and unlike in a legal-sufficiency review, courts examine the evidence in a neutral light. *Id.* at 671. A finding rejecting a defendant's affirmative defense cannot be overruled unless, 'after setting out the relevant evidence supporting the verdict, the court clearly states why the verdict is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased.' *Id.*

*Butcher v. State*, --- S.W.3d ---, No. PD-1662-13, 2015 WL 359087, at *5 (Tex. Crim. App. Jan. 28, 2015).

To avail himself of the mitigating effect[1] of Section 20.04(d), Dominguez must have proved by a preponderance of the evidence that he "performed 'some overt and affirmative act' which brought home to his victim that she had been 'fully released from captivity.'" *Harrell v. State*, 65 S.W.3d 768, 772 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). "That release must have occurred in a place and manner which realistically conveyed to [the victim] that she was then freed from captivity and in circumstances and surroundings wherein aid was readily available." *Id.*; *Woods v. State*, 301 S.W.3d 327, 331 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

The term "voluntarily" in Section 20.04(d) is narrowly interpreted as the absence of "rescue by the police [or others] or escape by the [kidnap] victim." *Brown v. State*, 98 S.W.3d 180, 188 (Tex. Crim. App. 2003). The Court of Criminal Appeals has defined "escape" to mean "to get oneself free from confinement or control." *Russell v. State*, 90 S.W.3d 865, 870 (Tex. App.—San Antonio 2002, pet. ref'd) (quoting *Estep v. State*, 901 S.W.2d 491, 495 (Tex. Crim. App. 1995)).

---

[1] I am constrained by the Court of Criminal Appeals' recent decision in *Butcher v. State*, - - - S.W.3d - - -, No. PD-1662-13, 2015 WL 359087, at *5 (Tex. Crim. App. Jan. 28, 2015), to review the trial court's rejection of Dominguez's request for a finding that he voluntarily released D.P. in a safe place as an affirmative defense, and not as a mitigation issue. *See id.* at *7 (Meyers, J., dissenting, and noting that the majority incorrectly analyzes the section 22.04(d) issue as an affirmative defense instead of a mitigation issue); *see also* TEX. CODE CRIM. PROC. ANN. art. 37.071 § 2(f)(4) (West Supp. 2014) (mitigating evidence is evidence that might reduce the defendant's "moral blameworthiness"); *compare Resendiz v. State*, 112 S.W.3d 541, 550 (Tex. Crim. App. 2003) (a positive jury finding on a mitigation issue has the potential to reduce a defendant's sentence); *with Gilbert v. State*, PD-1645-08, 2010 WL 454966, at *6 (Tex. Crim. App. Feb. 10, 2010) (not designated for publication) (Keller, P.J., concurring) (affirmative defense absolves defendant of criminal liability for an offense).

It is undisputed that Dominguez left the motel room voluntarily,[2] i.e., absent any "rescue by the police [or others] or escape by the [kidnap] victim." *See Brown*, 98 S.W.3d at 188. Under *Brown*, the uncontested "voluntary" element necessarily disposes of any consideration of "escape." The majority must "agree that the record is devoid of any evidence indicating that Dominguez involuntarily left(,)" i.e., there is no evidence supporting the trial court's rejection of the "voluntary" element of the affirmative defense.

### *Analysis - Was D.P. "Released"?*

The question then becomes, was there evidence of "release?" Did Dominguez perform an "overt and affirmative act" which caused D.P. to realize that she was "fully released from captivity?" *Harrell*, 65 S.W.3d at 772. D.P. testified that Dominguez told her, "That he's going to leave now, that he's leaving us there." She stated that he "knocked [on the bathroom door] and says, 'Hey, I'm leaving' and takes off." She then stated that she cried with her friend and then she "fe[l]l asleep for like 30 minutes. And then I woke up and we went back out into the room where the phone was. And [my friend] sat on the sofa near the bed and I sat on the bed and I started calling everybody that I knew that could come pick us up." Once D.P. reached her sister, her sister—assuming that Dominguez was still in the motel room—told D.P. to "[j]ust listen to whatever he says and just don't give him any reason to hurt you." D.P. told her, "Well, he's already gone." Her sister then said, "Okay, well, run to the nearest intersecti[on]. . ." D.P. then left the room and went to the motel's front office to see if she could find the exact location of the motel, but no one was there. She waited five minutes, and then went back to the motel room to tell her

---

[2] The Court of Criminal Appeals held that the term "voluntarily" was ambiguous as used in the language of the aggravated-kidnapping statute because it was "susceptible to different meanings some of which would support a holding that appellant's release of the victim was voluntary and some of which would support a contrary decision." *Butcher*, 2015 WL 359087, at *2 (citing *Brown*, 98 S.W.3d at 183). Whether the appellant's release was voluntary is undisputed here.

sister that she was just going to go to the nearest store. D.P. and her friend then "ran to Pizza Hut," where they again called her sister; her sister came to the Pizza Hut twenty minutes later and picked them up.

I believe the record lacks even a scintilla of evidence that Dominguez did not release D.P. D.P. is told by Dominguez and later assures her sister that Dominguez has left her in the motel room. The record is notably devoid of any evidence indicating that D.P. did not realize she was "fully released from captivity" once Dominguez left the motel, or that D.P.'s liberty was substantially interfered with by any threat or restraint. Although Dominguez told the police that he told the girls he was coming back with food, D.P. never testified she heard him say he was going to return or that she otherwise feared or expected his return at any time. Even assuming she heard Dominguez say he would return, the possibility of his return posed no substantial interference in her ability to leave the motel room. Noteworthy, the record is wanting of evidence that could reasonably support a finding that she was afraid or felt it was unsafe to leave the motel room, that she felt confined, or under the kidnapper's control, or that her liberty was restrained in any way. The majority's reasoning must assume facts to support the rejection of a finding of "release," i.e., that D.P. knew Dominguez would eventually return, and that D.P. did not realize that she was released from "captivity." In fact, the State contends that Dominguez abandoned D.P. in the motel room, which in my opinion essentially concedes that Dominguez not only released her but relinquished any further course of action that involved D.P.[3]

The majority's assumptions are not based on record evidence and, in fact, conflict with D.P.'s actions following the defendant's departure. D.P. testified she slept for thirty minutes before exiting the bathroom. D.P. remained in the motel room while repeatedly using the readily-

---

[3] "Abandon" is defined as "[t]o relinquish or give up with intent of never again resuming one's right or interest." BLACK'S LAW DICTIONARY 2 (5th ed. 1979).

available telephone to call for a ride and assured her sister that Dominguez was "gone." She left and later returned to the motel room before finally leaving for a nearby Pizza Hut. The record contains no evidence indicating D.P. had any sense of a continuing restraint, an expectation of the kidnapper's return at any time, or a fear or threat of pursuit.

The majority's reliance on *Ballard v. State*, 161 S.W.3d 269 (Tex. App.—Texarkana 2005), *aff'd*, 193 S.W.3d 916 (Tex. Crim. App. 2006), is misplaced. *Ballard*, unlike the present case, involved (1) police intervention and rescue, and (2) kidnapping by gunpoint and "some continuing control over the victim" precluding a finding of (i) voluntary (ii) release. *Id.* at 274-76. The *Ballard* facts support a legal finding by the factfinder rejecting the affirmative defense. Although the Court of Criminal Appeals found "such actions by the kidnapper" determinative, the majority here focuses instead on the actions of D.P. (using the phone and leaving the motel room) as "actions more consistent with escape rather than voluntary release" and refers without explanation to "ample evidence" that Dominguez did not voluntarily release D.P. "considering the surrounding circumstances."[4] On review, this court should properly consider the undisputed voluntariness of Dominguez's conduct in telling D.P. he was leaving and then leaving the motel, the absence of rescue, the victim's acknowledgment that he was gone, and the lack of evidence of any continuing threat or actual restraint of liberty, confinement or control over D.P. after Dominguez's departure that effectively prevented her from using the phone and leaving. Certainly, the record contains no evidence of actual harm or risk of harm posed to D.P. based on her having been left in the motel room or upon her leaving the motel.

---

[4] The majority also relies on Dominguez's statement to police that he told the girls to either stay in the motel room or wait in his car for two hours while he went to get plasma as evidence that he did not intend to release D.P.; the majority, however takes Dominguez's statement out of context. The statement Dominguez claimed to make to D.P. was not made as a warning or a threat, but merely as an explanation to the police as to why he left the girls unattended in the motel room.

Further, I disagree with the majority that testimonial evidence from Dominguez's recorded interview - that Dominguez told them "you have to stay here," that "he would be back," that he *intended* to return and for the girls to remain in the motel room, precludes the requested affirmative defense. A kidnapper's intent or motives, without evidence of "some continuing power over the victim during the time he left," exerted through violence or threat of violence, is inapposite. *See Butcher*, 2015 WL 359087, at *7 (Newell, J., concurring). "Section 20.04 does not require a showing of the defendant's motive in releasing the victim or that he take affirmative steps to undo the consequences of his conduct." *Butcher*, 2015 WL 359087, at *7 (Newell, J., concurring); *Brown*, 98 S.W.3d at 188 (Meyers, J., concurring) (noting that voluntary release does not consider the defendant's subjective motives). Without more, there is less than a scintilla supporting the rejection of the affirmative defense. The trial court's rejection of the requested affirmative defense should be overturned since, as explained herein, the evidence conclusively proves his affirmative defense and no reasonable factfinder was free to think otherwise.

Moreover, I believe the court's rejection of the affirmative defense was so against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased.

The other authorities cited by the majority are likewise distinguishable. In *Ex parte Chandler*, 182 S.W.3d 350, 356 (Tex. Crim. App. 2005), the Court held there was no voluntary release where the defendant left the victims, who had been tortured and sexually abused, in an apartment behind locked burglar bars, forcing the victims to exit through a second-story window and climb down a tree. Clearly, in that situation, the victims were not free to depart unhindered, but were forced to escape under unsafe conditions. In *Cooks v. State*, 169 S.W.3d 288, 291-93 (Tex. App.—Texarkana 2005, pet. ref'd), the defendant escorted his kidnapping victim to the hospital with a gun in his pocket and told her not to talk; it was not until hospital personnel

intervened and separated the victim from the defendant that she felt released from captivity and told them that he had kidnapped her and that she sustained her injuries by jumping out of the car in an attempt to escape. Undoubtedly, such conduct by the defendant does not constitute an "overt and affirmative act" which would signal to the victim that she was "fully released from captivity." *See Harrell*, 65 S.W.3d at 772. Finally, the majority cites *Harrell*, in which the court of appeals held that the defendant was not entitled to a safe release finding where he left his victim, who had been abducted at knifepoint, bound and gagged on the side of the road. *Id.* The court of appeals went on to state that it need not decide whether the victim was actually "released" because the record contained ample evidence that she was not left in a "safe place." *Id.* at 772-73 (noting the victim was left, in the early morning hours of a cold winter's day, on the side of a sparsely populated, dimly lit road, which had been the site of numerous crimes; also, a pack of wild dogs roamed the area).

Simply put, every opinion that has affirmed the rejection of a safe release finding on the specific issue of "release" contains fact scenarios that are simply not on par with the "release" evidence before us. *See, e.g., Gaither v. State*, No. 04-10-00548-CR, 2011 WL 3915820, at *5 (Tex. App.—San Antonio Sept. 7, 2011, no pet.) (mem. op.) (not designated for publication) (no voluntary release even though defendant left the house where the victim was assaulted because the victim had been strangled to the point of unconsciousness and was left in the company of a person who was a party to her earlier beating); *Girdy v. State*, 175 S.W.3d 877, 880-81 (Tex. App.—Amarillo 2005), *aff'd*, 213 S.W.3d 315 (Tex. Crim. App. 2006) (no voluntary release where defendant did not stop vehicle carrying victim until directed to do so by police); *Fowler v. State*, 958 S.W.2d 853, 860 (Tex. App.—Waco 1997), *aff'd*, 991 S.W.2d 258 (Tex. Crim. App. 1999) (no release where police demanded that defendant surrender and release victim).

While *Ballard* and the other cases cited by the majority are inapplicable to the case before us, I find *Lavarry v. State*, 936 S.W.2d 690, 696-99 (Tex. App.—Dallas 1996, pet. dism'd), compelling for its discussion regarding "release." In that case, the defendant held his ex-girlfriend and her boss at gunpoint for almost four hours at the ex-girlfriend's apartment. *Id*. at 693. The defendant eventually left the boss at the apartment and took his ex-girlfriend with him. *Id*. Before he left, the defendant told the boss not to call the police or he would kill the ex-girlfriend. *Id.* The ex-girlfriend then drove the defendant to his best friend's aunt's house. *Id*. When they arrived, the defendant again told the ex-girlfriend, "I told your friend not to call the police, but I know they are already over there. But you haven't heard the last of this. If the police are involved, I'll be back." *Id*. He also took the gun that he had been pointing at her side and said, "Hum. Well, I better take this with me because I'm going to need it." *Id*. He then got out of the car and the ex-girlfriend drove away. *Id*. She returned to her apartment and talked to the police, who had been called by her boss. *Id*. at 693, 698-99.

The *Lavarry* court held that even though the defendant threatened to kill or hurt his victims if they called or talked to the police, they were nonetheless released in a safe place. *See id*. at 698-99. Despite the defendant's threats, the victim in fact called the police once the defendant left. *Id*. Thus, the court explained that the threats to kill did not constitute a continuing restraint because there was no "substantial interference" with the victims' liberty by confinement, especially where such threats had no effect on the victims' liberty as demonstrated by the fact that the police were immediately called. *Id*. at 698.

*Lavarry* is instructive because it properly examines the actions of the victim following the defendant's departure to determine whether the victim realized he or she had been released from captivity. The majority in the present case fails to conduct such an examination, and instead

focuses improperly on Dominguez's intent and motives, ill or otherwise. Again, even assuming that D.P. feared Dominguez's return, the threat of return did not constitute a continuing restraint because there was no "substantial interference" with her liberty as demonstrated by the fact that she could readily place several telephone calls, including to her sister, leave the room and later return to the room. *See id.* Because the greater weight of the credible evidence creates a reasonable belief that D.P. realized that she had been released from captivity, I am compelled to conclude that Dominguez met his burden of proving that he voluntarily released D.P. in accordance with Section 20.04(d). *See* TEX. PENAL CODE ANN. § 20.04(d); *Hacker*, 389 S.W.3d at 865; *Scamardo*, 517 S.W.2d at 298.

I would also conclude that Dominguez satisfied "the second prong" of Section 20.04(d) because D.P. was released in a safe place. The Court of Criminal Appeals has recently held that the term "safe place" is ambiguous and that the determination of whether a place is safe is fact-specific and should be made on a case-by case basis. *Butcher*, 2015 WL 359087, at *3. Nonetheless, the Court agreed that the following "nonexclusive aids" may be taken into consideration when making the "safe place" determination: (1) the remoteness of the location; (2) the proximity of authorities or persons who could aid or assist; (3) the time of day; (4) climatic conditions; (5) the condition of the victim; (6) the character of the location or surrounding neighborhood; and (7) the victim's familiarity with the location or surrounding neighborhood. *Id.* at *5 (citing *Williams v. State*, 718 S.W.2d 772, 774 (Tex. App.—Corpus Christi 1986), *aff'd in part and rev'd in part on other grounds*, 851 S.W.2d 282 (Tex. Crim. App. 1993)). The Court cautioned that these factors must be considered under the totality of the circumstances of each case. *Butcher*, 2015 WL 359087, at *5. For example, the Court noted that age may be a factor in determining whether a place is safe. *Id.* at *5 & n.10 (affirming rejection of safe place finding

where nine-year-old girl was kidnapped at knifepoint and later returned to her apartment complex but her mother was not at home and she had no access to a phone or transportation). In addition, "the victim's feelings of safety may be a factor in determining the safety of a place, but in no case [will] it convert[] an otherwise safe place (like a victim's home or operable car) into an unsafe place." *Storr v. State*, 126 S.W.3d 647, 653 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (quoting *Lavarry*, 936 S.W.2d at 697).

In applying the nonexclusive factors used to determine whether a location is safe for purposes of a Section 20.04(d) analysis, I believe that the following facts indicate that Dominguez released D.P. in a safe place:

- D.P., a sixteen year-old, was left in a motel room with her teenage friend.
- The motel was located in the City of San Antonio on a major thoroughfare in a commercial area; thus, the location was not remote.
- There was no evidence that the motel was located in an area known for criminal activity.
- The motel room contained an operable telephone which D.P. could have used to call 911, and which she did in fact use to *place several calls and* reach her sister, who later picked her up at a nearby Pizza Hut.
- At the time D.P. was released, it was approximately three o'clock in the afternoon; there was no indication that it was dark outside.
- The weather was temperate; D.P. was wearing shorts and a sweater.
- Although I am sensitive to the fact that D.P., a minor, was sexually assaulted, the record contains no evidence that she was otherwise threatened, injured, restrained, drugged, or unable to get to the telephone to call for assistance, as demonstrated by the fact that she made several calls from the telephone located in the motel room and then went to a nearby Pizza Hut to meet her sister.

The facts before this court are readily distinguishable from those cases that have held that the victim was not released in a safe place. *See, e.g., Rodriguez-Flores v. State*, 351 S.W.3d 612, 637 (Tex. App.—Austin 2011, pet. ref'd) (evidence sufficient to support jury's rejection of safe release finding where five-year-old boy was left alone in a dark stairwell of an unfamiliar apartment complex on a cold February night); *Woods v. State*, 301 S.W.3d 327, 332 (Tex. App.— Houston [14th Dist.] 2009, no pet.) (complainant not released in safe place when released at 4:00

a.m. in a sparsely populated area that had been the site of criminal activity, with no other people present); *Harrell*, 65 S.W.3d at 773 (complainant not released in safe place when the area was sparsely populated, dimly lit, the home of a pack of wild dogs, and the site of numerous burglaries, two sexual assaults, and two homicides and when the time of release was early morning in winter); *Rodriguez v. State*, 766 S.W.2d 360, 361 (Tex. App.—Texarkana 1989, pet. ref'd) (complainant who had been sexually assaulted was not released in a safe place when released during a winter night on a rural dirt road a few minutes' walk from a gas station when it was not clear she would find aid in the vicinity). Here, in contrast, D.P. at sixteen was left unrestrained in a motel located on a major city street. She was released in the afternoon, there was plenty of daylight, and the weather was comfortable. Although D.P. was unfamiliar with the motel's location, she was still able to call for assistance from a readily available telephone and direct her sister to a meeting place. *See, e.g., State v. White*, 492 S.E.2d 48, 53 (N.C. Ct. App. 1997) (holding kidnapping victim who had been severely beaten and sexually assaulted was released in a safe place when taken to a motel and given change to use a pay phone). D.P. walked with her friend to a nearby restaurant to wait for her sister, who arrived within twenty minutes. The record contains no evidence of a dangerous condition or known criminal activity in the area. I would therefore conclude that the greater weight of the credible evidence creates a reasonable belief that the location in which Dominguez voluntarily released D.P. was safe. *See* TEX. PENAL CODE ANN. § 20.04(d); *see also Hacker*, 389 S.W.3d at 865; *Scamardo*, 517 S.W.2d at 298.

Based on the foregoing, I would conclude that the evidence is legally insufficient to support the trial court's rejection of Dominguez's request for a safe release finding. No reasonable trier of fact could have concluded that D.P. was restrained in her liberty by confinement, much less forced to escape from the motel. *See Matlock*, 392 S.W.3d at 670. She knew her kidnapper had "gone,"

she was not held against her will, she felt free to leave, and she did in fact leave.  I disagree that the kidnapper's intent to return equates to the scintilla of evidence required to affirm.  D.P. was also a sixteen year old released in a location that was safe and in which aid was readily available.  Thus, Dominguez conclusively proved that he voluntarily released D.P. in a safe place.  *Id*. at 669-70.

In addition, the trial court's rejection of Dominguez's request for a safe release finding is so "against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased."  *Matlock*, 392 S.W.3d at 671.  While I am mindful against substituting my own judgment for that of the factfinder, this record contains ample evidence supporting a reasonable conclusion that there was a safe release.  To conclude otherwise would be contrary to the legislative intent of Section 20.04(d), which is to provide an incentive to kidnappers to safely release their kidnap victims.  *See Brown*, 98 S.W.3d at 187-88 (the plain language of Section 20.04(d) provides an "incentive" to kidnappers to release their kidnap victims; legislative purpose of Section 20.04(d) is to encourage kidnappers to release their kidnap victims).  If Section 20.04(d) does not apply to the facts before us, I can imagine very few scenarios in which it would apply.  I believe the facts before us warrant reversing the judgment of the trial court as to Count I and remanding the matter to the trial court for a new punishment hearing as to Count I.  *See* TEX. CODE CRIM. PROC. ANN. art. 44.29(b) (West Supp. 2014).  In all other respects, I would affirm the judgment of the trial court.

Rebeca C. Martinez, Justice

PUBLISH