Kenneth Deshun WOODS, Appellant

v.

The STATE of Texas, Appellee.

No. 14–08–00178–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 10, 2009.

Jules Evan Johnson, Houston, TX, for Appellants.

B. Warren Goodson, Galveston, TX, for Appellees.

Panel consists of Chief Justice HEDGES and Justices YATES and FROST.

## OPINION

ADELE HEDGES, Chief Justice.

A jury found appellant, Kenneth Deshun Woods, guilty of aggravated kidnapping and assessed punishment at 40 years in prison. On appeal, he challenges (1) the legal and factual sufficiency of the evidence to support the jury's finding that he did not voluntarily release the complainant in a safe place, (2) the trial court's exclusion of polygraph evidence and evidence of the complainant's sexual history, and (3) the trial court's denial of his *Batson* challenge. We affirm.

## I. BACKGROUND

On the night of May 26, 2006, and into the early morning hours of May 27, 2006, appellant, a police officer for the Galveston Police Department, was working ferry de-

tail with a fellow officer. While on ferry duty, appellant patrolled the Galveston East Beach area, and at some point during his patrol, he made contact with the complainant. It is undisputed that appellant subsequently drove the complainant to another area on the beach, and there, the complainant performed a sexual act on appellant The complainant, however, alleged that appellant forced her into his patrol unit and ordered her to perform a sexual act, while appellant contends that the complainant voluntarily entered his patrol unit and voluntarily performed the sexual act.

At trial, the complainant testified as follows: she was on Galveston beach after having argued with her boyfriend. Sometime after 3:00 a.m., appellant approached her vehicle, illuminated his patrol light at her truck, and ordered her out of the vehicle. She complied, and appellant searched her vehicle and her person. After appellant conducted the searches, he ordered her into the backseat of his patrol unit and drove her to an area concealed by bushes and other shrubbery. At the concealed location, appellant ordered her out of the patrol unit, told her to remove her clothing, and demanded sex and oral sex. The complainant testified that she briefly performed oral sex on appellant and then, by hand, caused appellant to ejaculate. After the complainant performed these sexual acts on appellant, he drove her back to her vehicle and then left the area in his patrol unit.

Appellant strongly disputed the complainant's version of events. At trial, appellant testified that while he was patrolling in the Galveston East Beach area, the complainant called out to him and told him that she wanted to get back at her boyfriend. The complainant offered him sex, and she voluntarily entered his patrol unit. He and the complainant drove to the location identified by the complainant, and the

complainant volunteered to give him a "hand job." Following the performance of the sexual act on appellant, he drove the complainant back to her vehicle. Appellant testified that he did not threaten the complainant and that she appeared to be calm during and after the sexual act.

After the complainant returned to her vehicle, she sought help. Although the immediate area was unpopulated, the complainant eventually found someone willing to help, and she called 911. Appellant was subsequently charged by felony indictment with the aggravated kidnapping of the complainant. The indictment alleged that appellant, with the intent to sexually abuse the complainant, restricted her movements without consent by secreting or holding the complainant in a place where she was not likely to be found. Appellant pleaded not guilty to the indictment, and the case was tried to a jury. The jury ultimately found appellant guilty of aggravated kidnapping as alleged in the indictment. At punishment, a special issue was submitted to the jury as to whether appellant voluntarily released the complainant in a safe place. The jury found that appellant did not voluntarily release the complainant in a safe place and sentenced him to 40 years in prison.

On appeal, appellant raises four issues, contending that: (1) the evidence is legally and factually insufficient to support the jury's finding that appellant did not voluntarily release the complainant in a safe place; (2) the trial court erred by excluding polygraph evidence and evidence of the complainant's sexual history; and (3) the trial court erroneously denied his *Batson* challenge.

## II. SUFFICIENCY OF THE EVIDENCE

■ In his first issue, appellant argues that the evidence is legally and factually

insufficient to support the jury's negative finding on the special issue of voluntary release in a safe place. A person commits aggravated kidnapping if he intentionally or knowingly abducts another person with the intent to facilitate the commission of a felony, inflict bodily injury, or violate or abuse the victim sexually. Tex. Penal Code § 20.04(a). Aggravated kidnapping is generally a first-degree felony, punishable by a term of imprisonment for 5–99 years, or life. *Id.* §§ 20.04(c), 12.32(a). However, "[a]t the punishment stage of trial, the defendant may raise the issue as to whether he voluntarily released the victim in a safe place. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree." *Id.* § 20.04(c)-(d). A second-degree felony is punishable by a term of imprisonment for 2–20 years. *Id.* § 12.33(a). In this case, the jury found that appellant did not voluntarily release the complainant in a safe place and sentenced appellant to 40 years in prison. Challenging the jury's voluntary-release finding, appellant contends that because there is sufficient evidence to support the mitigating factor that he voluntarily released the complainant in a safe place, punishment should have been assessed between 2 and 20 years, the second-degree felony punishment range.

■ As a threshold matter for review, appellant contends that once he introduced some evidence of voluntary release in a safe place, the burden of persuasion then shifted to the State "to convince the fact finder that the place where the accused left his victim was not safe." Appellant is incorrect. The plain language of the statute places the burden of proof on the accused. *Id.* § 20.04(d) ("At ... punishment ..., the defendant may raise the issue as to whether he voluntarily released the victim in a safe place. If the defen-

dant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree."). Furthermore, this court has held that the defendant, indeed, has the burden of proof to show voluntary release in a safe place. *See Nolan v. State,* 102 S.W.3d 231, 236–37 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd).

■ In reviewing the legal sufficiency of the evidence to support a negative finding on an issue for which the defendant has the burden of proof, the proper standard of review involves two steps. First, we must examine the record for evidence that supports the negative finding while ignoring all evidence to the contrary. *Velazquez v. State,* 222 S.W.3d 551, 554 (Tex. App.-Houston [14th Dist.] 2007, no pet.). Second, if no evidence supports the negative finding, we must examine the entire record to determine whether it establishes the contrary proposition as a matter of law. *Id.; Nolan,* 102 S.W.3d at 238. In conducting a factual-sufficiency review of the jury's determination, we assess whether, after considering all the evidence relevant to the issue at hand, the jury's finding is so against the great weight and preponderance of the evidence so as to be manifestly unjust. *Meraz v. State,* 785 S.W.2d 146, 154–55 (Tex.Crim.App.1990); *Harrell v. State,* 65 S.W.3d 768, 772 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd).

■ To constitute a voluntary release in a safe place, "the release must have occurred in a place and manner which realistically conveyed [to the complainant] that she was then freed from captivity and in circumstances and surroundings wherein aid was readily available." *Harrell,* 65 S.W.3d at 772. We consider the following factors in reviewing a voluntary-release finding: (1) the remoteness of the location; (2) the proximity of authorities or persons who could aid or assist; (3) the time of

day; (4) climatic conditions; (5) the condition of the victim; (6) the character of the location or surrounding neighborhood; and (7) the victim's familiarity with the location or surrounding neighborhood. *Id.* at 772–73 (citing *Lavarry v. State*, 936 S.W.2d 690, 696 (Tex.App.-Dallas 1996, pet. dism'd)).

█ In support of his safe-release argument, appellant cites to evidence that: (1) he voluntarily released the complainant by unlocking his car door; (2) he released the complainant in a safe public place frequented by the complainant and others, and (3) he released the complainant near her operable vehicle. We disagree, finding ample evidence to support the jury's finding that the complainant was not released in a *safe place.* The record reflects that at the time of the offense and release, the location of release was sparsely populated, dark, and had been the site of criminal activity. Specifically, Captain Walter Braun of the Galveston Police Department described the site of release as dark and remote, while another witness, Sofronia Pittman, testified that the site was one in which a number of women had died. The complainant also testified that at her time of release, approximately 4:00 a.m., before daylight, there were no people around to aid or assist her. She also testified that she was in a state of hysteria and fear upon her release. From this evidence, the jury could have reasonably concluded that appellant did not leave the complainant in a safe place. *Harrell*, 65 S.W.3d at 772–

73. Accordingly, we conclude that appellant neither proved as a matter of law that he released the complainant in a safe place, nor established that the jury's finding was manifestly unjust.[1] We overrule appellant's first issue.

## III. EVIDENTIARY EXCLUSIONS

█ In his second and fourth issues, appellant challenges the trial court's evidentiary rulings excluding polygraph evidence and evidence of the complainant's sexual history. The admission of evidence is within the discretion of the trial court, and the trial court will not be reversed absent an abuse of discretion. *Moses v. State*, 105 S.W.3d 622, 627 (Tex.Crim.App. 2003); *Osbourn v. State*, 92 S.W.3d 531, 537–38 (Tex.Crim.App.2002); *Burton v. State*, 230 S.W.3d 846, 849 (Tex.App.-Houston [14th Dist.] 2007, no pet.). A trial court does not abuse its discretion if its evidentiary ruling was within the "zone of reasonable disagreement," and was correct under any legal theory applicable to the case. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex.Crim.App.2007); *Bargas v. State*, 252 S.W.3d 876, 889–90 (Tex.App.-Houston [14th Dist.] 2008, no pet.). Because the trial court is usually in the best position to decide whether evidence should be admitted or excluded, we must uphold its ruling unless its determination was so clearly wrong as to lie outside the zone within which reasonable persons might disagree. *See Winegarner*, 235 S.W.3d at 790

---

1. During closing arguments at sentencing, the State argued that there was some evidence that appellant had voluntarily released the complainant in a safe place. Taken in context, the State was simply acknowledging the existence of *some* evidence of voluntary release in a safe place. The State did not concede that appellant had in fact met his burden of proof by a preponderance of the evidence. Furthermore, argument of counsel is not evidence of voluntary release in a safe place.

*See Motilla v. State*, 38 S.W.3d 821, 824 (Tex. App.-Houston [14th Dist.] 2001) (acknowledging that closing arguments are not evidence), *rev'd on other grounds*, 78 S.W.3d 352 (Tex.Crim.App.2002); *Mata v. State*, 1 S.W.3d 226, 228 (Tex.App.-Corpus Christi 1999, no pet.) ("[I]t is axiomatic that argument of counsel is not evidence."). Additionally, the jury was free to reject this portion of the State's argument. *See Vasquez v. State*, 67 S.W.3d 229, 236–39 (Tex.Crim.App.2002).

(quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997)); *see also Hartis v. State*, 183 S.W.3d 793, 801–02 (Tex.App.-Houston [14th Dist.] 2005, no pet.).

### A. Polygraph Evidence

■ In his second issue, appellant contends that the trial court erred in excluding polygraph evidence as rebuttal evidence because the exclusion violated his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. The Texas Court of Criminal Appeals has long held that polygraph evidence is inadmissible for all purposes. *Tennard v. State*, 802 S.W.2d 678, 683 (Tex.Crim.App.1990). However, citing to a decision by the United States Court of Appeals for the Fifth Circuit, appellant invites us to reconsider this issue and deem polygraph evidence admissible for purposes of assessing credibility. *See United States v. Allard*, 464 F.3d 529, 532–35 (5th Cir.2006).

In *Allard*, the Fifth Circuit concluded that polygraph evidence was properly admitted as evidence that the accused's confession was voluntary. *Id.* at 534–35. The Fifth Circuit did not generally conclude that polygraph evidence was admissible, but narrowly reasoned that because the evidence was admitted for the limited purpose of determining the voluntariness of a confession, not for scientific purposes, its admission neither violated evidence rule 702 nor the reliability requirements mandated under *Daubert*. *Id.* Although a number of federal circuit courts, including the Fifth Circuit, have held that polygraph evidence is admissible in the very limited context of rebutting an accused's assertion that his confession was coerced, the Court of Criminal Appeals has determined that polygraph evidence is generally inadmissible in a Texas criminal proceeding. *Nesbit v. State*, 227 S.W.3d 64, 66 n. 4 (Tex.Crim.

App.2007) ("Neither the results of a polygraph test nor the 'fact' of failing a polygraph test are admissible in a Texas criminal proceeding."); *Tennard*, 802 S.W.2d at 683 ("The existence and results of a polygraph examination are inadmissible for all purposes."); *Nethery v. State*, 692 S.W.2d 686, 700 (Tex.Crim.App.1985) ("It has long been the rule in this State that the results of a polygraph test are inadmissible *for all purposes*."); *Robinson v. State*, 550 S.W.2d 54, 59 (Tex.Crim.App.1977) ("It has been the consistent holding of this Court that evidence of the results of a lie detector or polygraph is not admissible on behalf of either the State or the defendant."); *Jasso v. State*, 112 S.W.3d 805, 813 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd) ("[T]he existence and results of polygraph examinations are inadmissible for any purpose in a criminal proceeding . . . .").

In this case, appellant sought to introduce evidence that he had in fact taken a polygraph examination to establish that he had cooperated with law enforcement during the criminal investigation. Appellant also sought to introduce the results of the polygraph for credibility purposes. Because the Court of Criminal Appeals has determined that polygraph evidence is inadmissible for the purposes in which appellant sought to introduce the evidence, we conclude that the trial court did not abuse its discretion in excluding the polygraph evidence. *See Nesbit*, 227 S.W.3d at 66 n. 4; *Tennard*, 802 S.W.2d at 683; *Nethery*, 692 S.W.2d at 700; *Robinson*, 550 S.W.2d at 59. We overrule appellant's second issue.

### B. Complainant's Sexual History

In appellant's fourth issue, he challenges the trial court's exclusion of the complainant's extraneous-sexual acts. At trial, appellant sought to introduce evidence that the complainant had previously been sexu-

ally assaulted and had received counseling. Appellant argues that this extraneous-acts evidence regarding the complainant was admissible because: (1) evidence rule 412, commonly referred to as Rape Shield, did not apply to bar the admission of the complainant's sexual history and (2) the evidence was relevant on the issue of consent and to show both the complainant's and appellant's mental state at the time of the offense.

■ Appellant first argues that rule 412, which prohibits the admission of a victim's sexual history, applies only to sexual assault cases. He contends that because he was charged with aggravated kidnapping, not sexual assault, the trial court erroneously excluded the complainant's sexual history under evidence rule 412. Although the primary offense charged against appellant was aggravated kidnapping, the underlying offense supporting the primary offense was sexual assault. Specifically, the indictment alleged that appellant, "with the intent to violate or abuse [the complainant] sexually," abducted her by restricting her movements without consent. The Court of Criminal Appeals has applied rule 412 in the limited context where an underlying sexual assault offense predicates a non-sexual assault charge. See Boyle v. State, 820 S.W.2d 122, 145–149 (Tex.Crim.App.1989), overruled on other grounds by Gordon v. State, 801 S.W.2d 899, 911 n. 13 (Tex.Crim.App. 1990).

In Boyle, the defendant was charged with two counts of capital murder, predicated on two underlying offenses of kidnapping and sexual assault: the indictment alleged that the defendant committed murder "in the course of aggravated sexual assault, and murder in the course of kidnapping." Id. at 145–46. At his murder trial, the trial court excluded the defendant's proffered evidence of the victim's

sexual history. Id. at 145. On appeal, the Court of Criminal Appeals applied rule 412 to affirm the trial court's exclusion of the victim's sexual history. The Court of Criminal Appeals first acknowledged that rule 412 was applicable and then analyzed the admissibility issue under subsection (b). Id. at 146–47. The Boyle Court ultimately concluded that evidence of the victim's sexual history was inadmissible under rule 412 and affirmed the trial court's ruling excluding the evidence. Following Boyle, we apply rule 412 in the limited context where an underlying sexual assault offense predicates a non-sexual assault charge. Because the underlying offense in the instant case was sexual assault, we apply rule 412 in determining the admissibility of the complainant's prior sexual assault and of counseling she had received relating to the prior assault. See Boyle, 820 S.W.2d at 146–49.

■ Evidence rule 412 prohibits the admission of evidence of a victim's previous sexual conduct unless it falls within five exceptions: (1) it is necessary to rebut or explain scientific or medical evidence offered by the State; (2) it concerns past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior which is the basis of the offense charged; (3) it relates to the motive or bias of the alleged victim; (4) it is admissible under rule 609; or (5) it is constitutionally required to be admitted. Tex.R. Evid. 412(b)(2). Furthermore, the probative value must outweigh the danger of unfair prejudice. Tex.R. Evid. 412(b)(3). We conclude that the complainant's previous sexual assault does not fit within any of the enumerated exceptions. The prior assault was not necessary to rebut scientific or medical evidence offered by the State. The prior sexual assault did not involve appellant, and appellant has

failed to show in what way the previous assault shows the complainant's motive or bias, if any. Additionally, the previous sexual assault was neither admissible under rule 609 nor constitutionally required to be admitted. Because the prior assault was not probative of a material fact, we find that the probative value, if any, is substantially outweighed by its prejudicial effect. *See* Tex.R. Evid. 412(b)(3). Accordingly, extraneous evidence of the complainant's previous sexual assault and counseling therefrom was inadmissible under rule 412.

▮▮▮▮ Furthermore, even if rule 412 was not applicable, we must affirm the trial court's evidentiary ruling if it is supported under *any* theory of law. *See Winegarner*, 235 S.W.3d at 790; *Bargas*, 252 S.W.3d at 889–90. We conclude that the complainant's sexual history was inadmissible under evidence rules 401 and 403. Generally, only relevant evidence is admissible. *Moses*, 105 S.W.3d at 626; *Salazar v. State*, 127 S.W.3d 355, 365 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R. Evid. 401. Appellant claims that the extraneous evidence was relevant on the issue of consent and would have shown the complainant's and appellant's mental state. However, there is nothing in the record before us reflecting that the prior sexual assault made the complainant's lack of consent more or less probable. There is no evidence that the prior assault was similar or related to the instant crime warranting admissibility. Appellant cites to no evidence that connects the prior sexual assault to the charged offense. Accordingly, the challenged evidence fails to have any probative value.

▮▮▮▮ Moreover, the probative value, if any, is substantially outweighed by its prejudicial effect. *See* Tex.R. Evid. 403. In determining whether the prejudicial effect of evidence substantially outweighs its probative value under rule 403, we consider (1) how compellingly evidence of the extraneous act serves to make a fact of consequence more or less probable; (2) the extraneous act's potential to impress the jury in some irrational but indelible way; (3) the trial time that the proponent will require to develop evidence of the extraneous misconduct; and (4) the proponent's need for the extraneous transaction evidence. *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex.Crim.App.2002). As explained above, the complainant's extraneous acts were not compelling evidence to make a fact of consequence more or less probable and had the potential to impress the jury in a irrational and indelible way. Additionally, appellant cites to little, if any, reasonable need for the evidence. Weighing the relevant factors, we hold that the probative value of the evidence, if any, of the complainant's sexual history and counseling was substantially outweighed by the prejudicial effect of the evidence. *See* Tex.R. Evid. 403.

We overrule appellant's fourth issue.

## IV. *BATSON* CHALLENGE

In his third issue, appellant posits the following question: "Whether a court is required to conduct a *Batson* analysis when it is the defense counsel who uses the peremptory challenge in an impermissibly discriminatory way[?]" In short, appellant challenges defense counsel's use of a peremptory strike on the last African-American venireperson.

During voir dire in the underlying proceedings, venireperson number 7, an Afri-

can–American male, expressed a strong reluctance to consider probation at sentencing. The State moved to strike venireperson number 7 for cause, defense counsel agreed with the State's challenge, and venireperson number 7 was struck for cause. Subsequently, defense counsel raised a challenge for cause as to venireperson number 30, an African–American female. Defense counsel argued that venireperson number 30 displayed a bias arising from her previously being molested. After the trial court denied appellant's challenge for cause, defense counsel used a peremptory strike to eliminate venireperson number 30.

Before the trial court swore in the jury, defense counsel asserted a challenge to the State's alleged peremptory strike of venireperson number 7. The State first reminded defense counsel that venireperson number 7 was struck for cause, not as a peremptory strike, because venireperson number 7 refused to consider probation at sentencing. The State also reminded defense counsel that he had agreed to strike venireperson number 7 for cause. Defense counsel acknowledged his mistake and abandoned his *Batson* challenge. The jury was thereafter impanelled. On appeal, appellant urges this court to conduct a *Batson* analysis on defense counsel's striking of venireperson number 30. Appellant, however, did not preserve this complaint for our review.

Texas law requires that an objection to a peremptory challenge be made before the jury is impanelled. Tex.Code Crim. Proc. art. 35.261; *Hill v. State,* 827 S.W.2d 860, 864–65 (Tex.Crim.App.1992). The defendant must object to the peremp-

tory strike of a venireperson and make a prima facie showing of racial discrimination, raising an inference that the prosecutor peremptorily struck a venireperson because of race. *Batson v. Kentucky,* 476 U.S. 79, 93–96, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Here, appellant abandoned the only *Batson* challenge asserted before the trial court. Appellant raised a challenge to the State's alleged peremptory strike of venireperson number 7. After the State reminded appellant that he had agreed to strike venireperson number 7 for cause because he refused to consider probation at sentencing, appellant abandoned his *Batson* challenge. By abandoning the only challenge to remove a potential juror and agreeing to impanel the remaining venirepersons, appellant has presented nothing for review.[2] We overrule appellant's third issue.

Having overruled all of appellant's issues, we affirm the trial court's judgment.

---

2. Appellant also contends that the trial court was required, *sua sponte*, to inquire into the reason for defense counsel's striking of venireperson number 30, the last African–American on the jury panel. Appellant cites to no authority supporting this contention. *See* Tex.R.App. P. 38.1(h) (requiring that a party's brief contain citations to authority to support appellate arguments). Accordingly, we do not address this argument. *See id.*