

NUMBER 13-09-00287-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ALEXANDER GONZALES,                                                      Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

**On appeal from the 329th District Court
of Wharton County, Texas.**

# MEMORANDUM OPINION

**Before Justices Garza, Benavides, and Vela
Memorandum Opinion by Justice Garza**

A jury convicted appellant, Alexander Gonzales, of aggravated kidnapping.  *See* TEX. PENAL CODE ANN. § 20.04 (Vernon 2003).  The trial court sentenced Gonzales to eighteen years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice.  *See id.* § 12.32 (Vernon Supp. 2010).  By three issues, which we reorganize as two, Gonzales contends that:  (1) the evidence was insufficient to find him

guilty of aggravated kidnapping; and (2) the trial court erred in finding that Gonzales did not voluntarily release his victim in a safe place.  We affirm.

## I. BACKGROUND

On February 17, 2008, Emma Medina walked from her home to the L-Stop convenience store in El Campo, Texas, as she did nearly every evening.  After purchasing some snacks and beer, Medina took a short-cut through a grass trail to return home when suddenly she felt two arms go around her neck.  Medina testified that she did not hear any footsteps approaching her before this happened, so she assumed that her assailant, later identified as Gonzales, was hiding in a field waiting for her to exit the store.  She repeatedly asked Gonzales to identify himself, to no avail.  She continued:  "What do you want?  Who are you? . . . Whatever you want, just take my purse and my bag.  Let me go," but Gonzales remained silent and "forcefully tighten[ed] his arms harder on [her] neck."  Medina testified that Gonzales pushed her forward from the grassy short-cut to the back of a nearby storage business near a dumpster.  According to Medina, when they stopped moving she asked again, "What do you want with me?," to which Gonzales answered, "I'm going to rape you, and I'm going to kill you."

Medina testified that she placed her bags and purse down.  The area was poorly lit—the only street light was on a distant street corner—and was not visible from the street.  She stated that she then told Gonzales, "Well, let me . . . take my shoes off to take my clothes off . . . [s]o you can do what you want to do with me . . . ."  When Medina glanced at Gonzales he said nothing, so she proceeded to remove her shoe.

Medina testified that she began running as soon as she removed one shoe.  She

2

ran into a barbed wire fence which tore her clothes and scratched her arms and legs as she tried to climb it. She stated that she was screaming for help and, when she looked back, Gonzales was running after her. She testified that, as she continued to scream louder, Gonzales eventually turned around, picked up Medina's purse and grocery bag, and left the area. Medina eventually climbed over the fence, ran to her house, and told her husband to call the police.

Corporal Chris Hadash of the El Campo Police Department responded to the call. Corporal Hadash testified that he spoke with Medina at her home. After learning that Medina had been grabbed while walking home and was forced behind the storage buildings and dumpster, he obtained a description of Gonzales and coordinated with other officers to look for him. He admitted that his initial report listed the event as a "robbery" only, and not a kidnapping. He also admitted that Medina did not initially mention that Gonzales threatened to rape or kill her. However, he testified that victims sometimes forget details while they are still under the stress of the situation, and that "[i]t's quite common for people to remember extra details later on after they've had a chance to calm down and think about it." Corporal Hadash stated that investigators found Medina's shoe in an area "blocked completely from view from the street of Calhoun and Wharton Street because of [a building] and that dumpster." He also testified that, "at the time [the area] was dark at night, but there are security lights by the road and on buildings" and that the only way he located her shoe was by using a flashlight.

Investigator Russell Urban testified that, after the incident, Medina positively identified Gonzales in a photographic line-up. Based on this identification and after

3

taking her statement, Investigator Urban obtained an arrest warrant for Gonzales. He interviewed Gonzales after arresting him and reading him his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 498 (1966). Investigator Urban stated that, although Gonzales initially denied any involvement in this attack, he eventually admitted that he was the person who attacked Medina. Gonzales ultimately signed a written confession which, in relevant part, stated the following:

> On Sunday, February 17, 2008, I had been drinking all day and I was drunk. I was at an L-Stop convenience store. I left the store at the same time that a lady was leaving. I saw that she had some beer in a plastic bag. I was out of money, and I wanted some more beer. I decided to follow the lady so I could take her beer and her purse. I followed her down East Calhoun Street. When we were near the storage buildings I ran up behind her and grabbed her from behind. I wrapped my arm around her and covered her mouth with my hand. I told her I was going to take her behind the storage buildings. I walked behind her pushing her forward. When we got to the back of the storage buildings she got loose from me. She dropped her bags and purse and started running. I picked her purse and bags up and ran. . . . I never told her that I was going to rape her. I never told her that I would kill her. The only thing I wanted was her money and the beer.

Investigator Urban testified that, although the initial patrol report only mentioned a robbery, his investigation led him to believe that an aggravated kidnapping also occurred. When cross-examined about an error in the report which stated that Medina was returning home from an H.E.B. grocery store and not the L-Stop convenience store, Investigator Urban explained, "When a patrol officer takes reports on the scene right after an incident's occurred, a lot of times the victim is upset or scared or, you know, just leaves out facts or says stuff that's not accurate and times that the patrol officer also misunderstands stuff or writes stuff that's wrong." Investigator Urban went on to explain that the discrepancies are corrected with further investigation and reports.

4

Gonzales testified in his defense. He reiterated the facts set forth in his written confession, stating that he was drunk and "just wanted to steal the beer." He testified that he did not intend to harm Medina. Gonzales stated that he grabbed Medina and that it only took him about forty seconds to push her behind the storage buildings. He explained that the reason he pushed Medina to the storage area was because "[he] didn't want [any]body to see what [he] was going to do, [which was] steal[ ] the beer." When Gonzales and Medina reached the area, he stated that he released his arm from her neck. He then stated that, "as soon as she put her purse down and bag down, I grabbed the beer. . . [and] grabbed the purse. That's when she ran towards the picket fence." Gonzales claimed that he did not chase Medina; instead, he ran in the opposite direction.

The jury convicted Gonzales of aggravated kidnapping. The court sentenced Gonzales to eighteen years' imprisonment after finding that Gonzales did not release Medina in a safe place. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review and Applicable Law

Gonzales challenged both the legal and factual sufficiency of the evidence used to convict him of aggravated kidnapping. However, in light of the Texas Court of Criminal Appeals's recent *Brooks v. State* opinion, we construe factual sufficiency challenges as challenges to the legal sufficiency of the evidence. *Brooks v. State*, No. PD-0210-09, 2010 Tex. Crim. App. LEXIS 1240, at *57 (Tex. Crim. App. Oct. 6, 2010) (plurality op). *Brooks* held that there is "no meaningful distinction between the *Jackson v. Virginia* legal sufficiency standard and the . . . factual-sufficiency standard, and these

5

two standards have become indistinguishable." *Id.* at *26. A *Jackson* sufficiency standard is "the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element in a criminal offense that the State is required to prove beyond a reasonable doubt. All other cases to the contrary . . . are overruled." *Id.* at *57. Accordingly, we apply solely the *Jackson* standard to evaluate arguments pertaining to the sufficiency of the evidence.

When conducting a sufficiency review, a court must ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"—not whether "*it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19 (emphasis in original). We are required to view all of the evidence in "a light most favorable to the verdict and to determine whether a rational trier of fact could have found all of the essential elements of the crime beyond a reasonable doubt." *Id.*; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). The trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony. TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). "Appellate courts are ill-equipped to weigh the evidence; unlike the fact-finder—who can observe facial expressions and hear voice inflections first-hand—an appellate court is limited to the cold record." *Laster*, 275 S.W.3d at 517 (citing *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)). We resolve any inconsistencies in the evidence in favor of the final judgment and consider whether the jury reached a rational decision. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

6

Evidentiary sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.—Corpus Christi 2002, pet. ref'd). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327; *Malik*, 953 S.W.2d at 240.

A person commits aggravated kidnapping if he intentionally or knowingly abducts another person with intent to: (1) hold the person for ransom or reward; (2) use the person as a shield or hostage; (3) facilitate the commission of a felony or the flight after the attempt or commission of a felony; (4) inflict bodily injury on the person or violate or abuse that person sexually; (5) terrorize the person or a third person; or (6) interfere with the performance of any governmental or political function. TEX. PENAL CODE ANN. § 20.04(a). "Abduct" means to restrain a person with intent to prevent their liberation by either secreting or holding that person in a place where they are not likely to be found or by using or threatening to use deadly force. *Id.* § 20.01(2). "Restrain" means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person. *Id.* § 20.01(1). Restraint is "without consent" if it is accomplished by force, intimidation, or deception. *Id.* § 20.01(1)(A).

Aggravated kidnapping is normally a first-degree felony. *Id.* § 20.04(c). However, at the punishment stage of the trial, if the defendant proves that he voluntarily

7

released the victim in a safe place by a preponderance of the evidence, the aggravated kidnapping offense is reduced to a second-degree felony.  *Id.* § 20.04(d).

## B.    Analysis

Gonzales complains that the evidence is insufficient to find him guilty of aggravated kidnapping.  Gonzales contends that, although the evidence may support a finding of robbery, it does not support an aggravated kidnapping finding.  We disagree with Gonzales and hold that the evidence supports the jury's finding that Gonzales "abducted" Medina.  We note the following:

> "'Abduct' means to restrain a person with intent to prevent his liberation by: (A) secreting or holding him in a place where he is not likely to be found; or (B) using or threatening to use deadly force."  First, the defendant must have restrained another, which is the actus reus requirement.  Second, the defendant must have had the specific intent to prevent liberation, which is the mens rea requirement.  Secreting or holding another where he or she is unlikely to be found is part of the mens rea requirement of the offense—not  the actus reus.  This is an important distinction because the State is not required to prove that the defendant actually secreted or held another.  Instead the State must prove that the defendant restrained another with the specific intent to prevent liberation by secreting or holding the person.  The offense of kidnapping is legally completed when the defendant, at any time during the restraint, forms the intent to prevent liberation by secreting or holding another in a place unlikely to be found.

*Laster*, 275 S.W.3d at 521 (internal citations omitted).

Gonzales acknowledges that he "restrained" Medina; his confession revealed that "[he] wrapped [his] arm around her and covered her mouth with [his] hand."  Medina did not consent to the restraint and Gonzales substantially interfered with her liberty as he forcefully moved her from the grassy short-cut to the area behind the storage building.  *See* TEX. PENAL CODE ANN. § 20.01(1), (1)(A).  This act establishes the actus reus component of abduction.  *Laster*, 275 S.W.3d at 521.  Gonzales then admits

8

that he pushed Medina to the storage area because he "didn't want [any]body to see what [he] was going to do. . . ." Investigator Urban testified that the location where Gonzales took Medina was dark and completely blocked from public view because of storage buildings and the dumpster. This evidence proves that Gonzales "secreted or held" Medina in a location where she would be unlikely to be found, which establishes the mens rea component of the crime. *See* TEX. PENAL CODE ANN. § 20.01(2). The Texas Court of Criminal Appeals has held that "a kidnapping becomes a completed offense when (1) a restraint is accomplished, and (2) there is evidence that the actor had the specific intent to prevent liberation by secretion or the use or threatened use of deadly force." *Santellan v. State*, 939 S.W.2d 155, 162 (Tex. Crim. App. 1997) (citing *Mason v. State*, 905 S.W.2d 570, 575 (Tex. Crim. App. 1995)). Accordingly, the evidence was sufficient to prove that Gonzales kidnapped Medina.

The evidence also supports that the kidnapping was aggravated, based on Medina's testimony that Gonzales told her that he planned to rape and kill her. This testimony established that the abduction would "facilitate the commission of a felony" or that Gonzales intended to "inflict bodily injury or violate or abuse [Medina] sexually." TEX. PENAL CODE ANN. § 20.04(a)(3), (4). Although Gonzales adamantly denied saying this, it was within the province of the jury to settle this conflicting evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04; *Beckham*, 29 S.W.3d at 151; *Laster*, 175 S.W.3d at 522. The jurors believed Medina's version of the facts over Gonzales's, and we will not disturb this finding.

Gonzales also argues that he only had his arm around Medina's neck for about forty seconds, which could not constitute a kidnapping. However, time is irrelevant as

9

the definition of abduction "does not require that the victim be held for any certain length of time." *Sanders v. State*, 605 S.W.2d 612, 614 (Tex. Crim. App. 1980). Gonzales further asserts that he could not have kidnapped Medina because he only moved her about forty to fifty yards from the grassy short-cut to the dumpster. However, distance is also irrelevant because kidnapping is established when the prosecution shows the defendant's "specific intent to prevent liberation by secreting or holding the person." *Laster*, 275 S.W.3d at 521-22 (finding that a defendant "kidnapped" a child when he grabbed the child's arm but let go of it seconds later when an eyewitness driver honked at him).

Viewing all of the evidence in a light most favorable to the verdict, we determine that a rational trier of fact could have found all of the essential elements of aggravated kidnapping beyond a reasonable doubt. *See Jackson*, 443 U.S. at 318-19. Therefore, the evidence is sufficient to support Gonzales's conviction. *Jackson*, 443 U.S. at 318-19; *see Brooks*, 2010 Tex. Crim. App. 1240, at *57. We overrule this issue.

### III. RELEASE IN A SAFE PLACE

**A.    Applicable Law**

By his next issue, Gonzales also contends that he proved by a preponderance of the evidence that he released Medina in a safe place and therefore should be entitled to a lower punishment range. As noted earlier, "[a]t the punishment stage of trial, the defendant may raise the issue as to whether he voluntarily released the victim in a safe place. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree." TEX. PENAL CODE § 20.04(d). The punishment range for a first-degree felony is five to ninety-nine years in prison,

while the range for a second-degree felony is only two to twenty years. *Id.* §§ 12.32(a), 12.33(a).

To constitute a voluntary release, "the release must have occurred in a place and manner which realistically conveyed [to the complainant] that she was then freed from captivity and in circumstances and surroundings wherein aid was readily available." *Harrell v. State*, 65 S.W.3d 768, 772 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd); *see Wiley v. State,* 820 S.W.2d 401, 411 (Tex. App.—Beaumont 1991, no writ) ("[A]n accused, in order to avail himself of the mitigating effect of § 20.04(b), must have performed some overt and affirmative act that brings home to the victim that he/she has been fully released . . . ."). To constitute a safe place, courts consider the following factors: (1) the remoteness of the location; (2) the proximity of authorities or persons who could aid or assist; (3) the time of day; (4) climactic conditions; (5) the condition of the victim; (6) the character of the location or surrounding neighborhood; and (7) the victim's familiarity with the location or surrounding neighborhood. *Woods v. State*, 301 S.W.3d 327, 331-32 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Lavarry v. State*, 936 S.W.2d 690, 696 (Tex. App.—Dallas 1996, pet. dism'd).

## B.      Analysis

Gonzales asserts that he released Medina near the dumpster and did not chase her when she ran. Instead, he "simply took the beer and ran in the opposite direction." He further contends Medina was not injured when she ran away, that the area from where she ran was not remote, and that she was familiar with the location and the neighborhood because she lived nearby.

Gonzales had the burden of proof to show that he voluntarily released Medina,

11

and the trial court as the factfinder determined that he did not meet this burden. *Woods*, 301 S.W.3d at 331 (citing *Nolan v. State*, 102 S.W.3d 231, 236-37 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). In support of this finding, we note that: (1) Gonzales forced Medina to a remote location behind a storage building, which was dark and completely obscured from traffic; (2) there were no persons in the area who could aid or assist Medina, as Medina testified that she screamed several times for help and no one came to her aid; (3) the abduction occurred at night; and (4) Medina tore her clothes and scratched her arms and legs on a barbed-wire fence while fleeing. *Woods*, 301 S.W.3d 327, 331-32; *Lavarry*, 936 S.W.2d at 696. Importantly, we also note that Gonzales's written confession reveals that Medina "got loose from [Gonzales]," not that he intentionally released her.

We defer to the fact-finder as the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04; *Beckham*, 29 S.W.3d at 151. "It is up to the factfinder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Laster*, 175 S.W.3d at 522. In this case, the judge believed Medina's version of the facts over Gonzales's, and we will not disturb this finding. *See Brown v. State*, 98 S.W.3d 180, 188 (Tex. Crim. App. 2003).

Viewing all of the evidence in a light most favorable to the verdict, we determine that a rational trier of fact could have found that Gonzales did not release Medina in a safe place. *Laster*, 275 S.W.3d at 517; *see Jackson*, 443 U.S. at 318-19. Therefore, the evidence is sufficient. *Jackson*, 443 U.S. at 318-19; *see Brooks*, 2010 Tex. Crim. App. 1240 at *57. We overrule this issue.

12

## IV. CONCLUSION

Having overruled all of Gonzales's issues, we affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
16th day of December, 2010.