NUMBER
13-09-00287-CR

 

                                        COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI
- EDINBURG

                                                                                                                                                                                                 


 

ALEXANDER GONZALES,                                                           Appellant,

 

v.

 

THE
STATE OF TEXAS,                                                               Appellee.


                                                                                                                                                                                                 


 

On appeal from the
329th District Court

of Wharton County,
Texas.

                                                                                                                                                                                                  


 

MEMORANDUM OPINION

 

                      Before
Justices Garza, Benavides, and Vela

                          Memorandum
Opinion by Justice Garza

 








A jury convicted appellant, Alexander
Gonzales, of aggravated kidnapping.  See Tex. Penal Code Ann. § 20.04 (Vernon
2003).  The trial court sentenced Gonzales to eighteen years= imprisonment in the Institutional Division of the Texas
Department of Criminal Justice.  See id. § 12.32 (Vernon Supp. 2010). 
By three issues, which we reorganize as two, Gonzales contends that:  (1) the
evidence was insufficient to find him guilty of aggravated kidnapping; and (2)
the trial court erred in finding that Gonzales did not voluntarily release his
victim in a safe place.  We affirm. 

I.  Background

On February 17, 2008, Emma Medina
walked from her home to the L-Stop convenience store in El Campo, Texas, as she
did nearly every evening.  After purchasing some snacks and beer, Medina took a
short-cut through a grass trail to return home when suddenly she felt two arms
go around her neck.  Medina testified that she did not hear any
footsteps approaching her before this happened, so she assumed that her
assailant, later identified as Gonzales, was hiding in a field waiting for her
to exit the store.  She repeatedly asked Gonzales to identify himself, to no
avail.  She continued:  AWhat do you want?  Who are you? . . .
Whatever you want, just take my purse and my bag.  Let me go,@ but Gonzales remained silent and Aforcefully tighten[ed] his arms harder on [her] neck.@  Medina testified that Gonzales pushed her forward from
the grassy short-cut to the back of a nearby storage business near a
dumpster.   According to Medina, when they stopped moving she asked again, AWhat do you want with me?,@
to which Gonzales answered, AI=m going to rape you, and I=m going to kill you.@    

Medina testified that she placed her
bags and purse down.  The area was poorly lit—the only street light was on a
distant street corner—and was not visible from the street.  She stated that she
then told Gonzales, AWell, let me . . . take my shoes off
to take my clothes off . . . [s]o you can do what you want to do with me . . .
.@  When Medina glanced at Gonzales he
said nothing, so she proceeded to remove her shoe. 

Medina testified that she began running
as soon as she removed one shoe.  She ran into a barbed wire fence which tore
her clothes and scratched her arms and legs as she tried to climb it.  She
stated that she was screaming for help and, when she looked back, Gonzales was
running after her.  She testified that, as she continued to scream louder,
Gonzales eventually turned around, picked up Medina=s purse and grocery bag, and left the area.  Medina
eventually climbed over the fence, ran to her house, and told her husband to
call the police.   








Corporal Chris Hadash of the El Campo
Police Department responded to the call. Corporal Hadash testified that he
spoke with Medina at her home.  After learning that Medina had been grabbed
while walking home and was forced behind the storage buildings and dumpster, he
obtained a description of Gonzales and coordinated with other officers to look
for him.  He admitted that his initial report listed the event as a Arobbery@ only, and not a kidnapping.  He also
admitted that Medina did not initially mention that Gonzales threatened to rape
or kill her.  However, he testified that victims sometimes forget details while
they are still under the stress of the situation, and that A[i]t=s quite common for people to remember
extra details later on after they=ve had a chance to calm down and think
about it.@  Corporal Hadash stated that
investigators found Medina=s shoe in an area Ablocked completely from view from the street of Calhoun
and Wharton Street because of [a building] and that dumpster.@  He also testified that, Aat
the time [the area] was dark at night, but there are security lights by the
road and on buildings@ and that the only way he located her
shoe was by using a flashlight. 

Investigator Russell Urban testified
that, after the incident, Medina positively identified Gonzales in a
photographic line-up.  Based on this identification and after taking her
statement, Investigator Urban obtained an arrest warrant for Gonzales.  He
interviewed Gonzales after arresting him and reading him his Miranda
rights.  See Miranda v. Arizona, 384 U.S. 436, 498 (1966).  Investigator
Urban stated that, although Gonzales initially denied any involvement in this
attack, he eventually admitted that he was the person who attacked Medina. 
Gonzales ultimately signed a written confession which, in relevant part, stated
the following:

On Sunday, February 17, 2008, I had
been drinking all day and I was drunk.  I was at an L-Stop convenience store. 
I left the store at the same time that a lady was leaving.  I saw that she had
some beer in a plastic bag.  I was out of money, and I wanted some more beer. 
I decided to follow the lady so I could take her beer and her purse.  I
followed her down East Calhoun Street.  When we were near the storage buildings
I ran up behind her and grabbed her from behind.  I wrapped my arm around her
and covered her mouth with my hand.  I told her I was going to take her behind the
storage buildings.  I walked behind her pushing her forward.  When we got to the
back of the storage buildings she got loose from me.  She dropped her bags and
purse and started running.  I picked her purse and bags up and ran. . . .  I
never told her that I was going to rape her.  I never told her that I would
kill her.  The only thing I wanted was her money and the beer.

 








Investigator Urban testified that,
although the initial patrol report only mentioned a robbery, his investigation
led him to believe that an aggravated kidnapping also occurred.  When
cross-examined about an error in the report which stated that Medina was
returning home from an H.E.B. grocery store and not the L-Stop convenience
store, Investigator Urban explained, AWhen a patrol officer takes reports on
the scene right after an incident=s occurred, a lot of times the victim
is upset or scared or, you know, just leaves out facts or says stuff that=s not accurate and times that the patrol officer also
misunderstands stuff or writes stuff that=s wrong.@ 
Investigator Urban went on to explain that the discrepancies are corrected with
further investigation and reports.

Gonzales testified in his defense.  He
reiterated the facts set forth in his written confession, stating that he was
drunk and Ajust wanted to steal the beer.@  He testified that he did not intend to harm Medina. 
Gonzales stated that he grabbed Medina and that it only took him about forty
seconds to push her behind the storage buildings.  He explained that the reason
he pushed Medina to the storage area was because A[he]
didn=t want [any]body to see what [he] was
going to do, [which was] steal[ ] the beer.@ 
When Gonzales and Medina reached the area, he stated that he released his arm
from her neck.  He then stated that, Aas soon as she put her purse down and
bag down, I grabbed the beer. . . [and] grabbed the purse.  That=s when she ran towards the picket fence.@  Gonzales claimed that he did not chase Medina; instead,
he ran in the opposite direction.

The jury convicted Gonzales of
aggravated kidnapping.  The court sentenced Gonzales to eighteen years= imprisonment after finding that Gonzales did not release
Medina in a safe place.  This appeal followed.

II.
 Sufficiency of the Evidence

A.        Standard of Review and Applicable Law








Gonzales challenged both the legal and
factual sufficiency of the evidence used to convict him of aggravated
kidnapping.  However, in light of the Texas Court of Criminal Appeals=s recent Brooks v. State opinion, we construe
factual sufficiency challenges as challenges to the legal sufficiency of the
evidence.  Brooks v. State, No. PD-0210-09, 2010 Tex. Crim. App. LEXIS 1240,
at *57 (Tex. Crim. App. Oct. 6, 2010) (plurality op).  Brooks held that
there is Ano meaningful distinction between the Jackson
v. Virginia legal sufficiency standard and the . . . factual-sufficiency
standard, and these two standards have become indistinguishable.@  Id. at *26.  A Jackson sufficiency
standard is Athe only standard that a reviewing
court should apply in determining whether the evidence is sufficient to support
each element in a criminal offense that the State is required to prove beyond a
reasonable doubt.  All other cases to the contrary . . . are
overruled.@  Id. at *57.  Accordingly, we
apply solely the Jackson standard to evaluate arguments pertaining to
the sufficiency of the evidence.  

When conducting a sufficiency review,
a court must ask whether Aany rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt”—not whether Ait
believes that the evidence at the trial established guilt beyond a reasonable
doubt.@  Jackson, 443 U.S. at 318-19
(emphasis in original).  We are required to view all of the evidence in Aa light most favorable to the verdict and to determine
whether a rational trier of fact could have found all of the essential elements
of the crime beyond a reasonable doubt.@  Id.; see Laster v. State,
275 S.W.3d 512, 517 (Tex. Crim. App. 2009).  The trier of fact is the sole
judge of the facts, the credibility of the witnesses, and the weight given to
testimony.  Tex. Code Crim. Proc. Ann.
art. 38.04 (Vernon 1979); Beckham v. State, 29 S.W.3d 148, 151 (Tex.
App.—Houston [14th Dist.] 2000, pet. ref=d).  AAppellate
courts are ill-equipped to weigh the evidence; unlike the fact-finder—who can
observe facial expressions and hear voice inflections first-hand—an appellate
court is limited to the cold record.@  Laster, 275 S.W.3d at 517
(citing Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)).  We
resolve any inconsistencies in the evidence in favor of the final judgment and
consider whether the jury reached a rational decision.  Curry v. State,
30 S.W.3d 394, 406 (Tex. Crim. App. 2000). 








Evidentiary sufficiency is measured by
the elements of the offense as defined by a hypothetically correct jury
charge.  Villarreal v. State, 286 S.W.3d 321, 327 (Tex. Crim. App.
2009); Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); Adi
v. State, 94 S.W.3d 124, 131 (Tex. App.—Corpus Christi 2002, pet. ref=d).  ASuch a charge is one that accurately
sets out the law, is authorized by the indictment, does not unnecessarily
increase the State=s burden of proof or unnecessarily
restrict the State=s theories of liability, and
adequately describes the particular offense for which the defendant was tried.@  Villarreal, 286 S.W.3d at 327; Malik, 953
S.W.2d at 240.  

A person commits aggravated kidnapping
if he intentionally or knowingly abducts another person with intent to:  (1)
hold the person for ransom or reward; (2) use the person as a shield or
hostage; (3) facilitate the commission of a felony or the flight after the
attempt or commission of a felony; (4) inflict bodily injury on the person or
violate or abuse that person sexually; (5) terrorize the person or a third
person; or (6) interfere with the performance of any governmental or political
function.   Tex. Penal Code Ann. §
20.04(a).  AAbduct@
means to restrain a person with intent to prevent their liberation by either
secreting or holding that person in a place where they are not likely to be
found or by using or threatening to use deadly force.  Id. § 20.01(2).  ARestrain@ means to restrict a person=s movements without consent, so as to interfere
substantially with the person=s liberty, by moving the person from
one place to another or by confining the person.  Id. § 20.01(1).  Restraint
is Awithout consent@ if it is accomplished by force, intimidation, or
deception.  Id. § 20.01(1)(A). 








Aggravated kidnapping is normally a
first-degree felony.  Id. § 20.04(c).  However, at the punishment stage
of the trial, if the defendant proves that he voluntarily released the victim
in a safe place by a preponderance of the evidence, the aggravated kidnapping
offense is reduced to a second-degree felony.  Id. § 20.04(d).  

B.        Analysis

Gonzales complains that the evidence
is insufficient to find him guilty of aggravated kidnapping.  Gonzales contends
that, although the evidence may support a finding of robbery, it does not
support an aggravated kidnapping finding.  We disagree with Gonzales and hold
that the evidence supports the jury=s finding that Gonzales Aabducted@ Medina.  We note the following:

A>Abduct= means to restrain a person with intent to prevent his
liberation by: (A) secreting or holding him in a place where he is not likely
to be found; or (B) using or threatening to use deadly force.@  First, the defendant must have restrained another,
which is the actus reus requirement.  Second, the defendant must have had the
specific intent to prevent liberation, which is the mens rea requirement. 
Secreting or holding another where he or she is unlikely to be found is part of
the mens rea requirement of the offense—not  the actus reus.  This is an
important distinction because the State is not required to prove that the defendant
actually secreted or held another.  Instead the State must prove that the
defendant restrained another with the specific intent to prevent liberation by
secreting or holding the person.  The offense of kidnapping is legally
completed when the defendant, at any time during the restraint, forms the
intent to prevent liberation by secreting or holding another in a place
unlikely to be found.

 

Laster, 275 S.W.3d at 521 (internal
citations omitted).  








Gonzales acknowledges that he Arestrained@ Medina; his confession revealed that A[he] wrapped [his] arm around her and covered her mouth
with [his] hand.@  Medina did not consent to the
restraint and Gonzales substantially interfered with her liberty as he
forcefully moved her from the grassy short-cut to the area behind the storage
building.  See Tex. Penal Code
Ann. § 20.01(1), (1)(A).  This act establishes the actus reus component
of abduction.  Laster, 275 S.W.3d at 521.  Gonzales then admits that he
pushed Medina to the storage area because he Adidn=t want [any]body to see what [he] was going to do. . . .@  Investigator Urban testified that the location where
Gonzales took Medina was dark and completely blocked from public view because
of storage buildings and the dumpster.  This evidence proves that Gonzales Asecreted or held@ Medina in a location where she would
be unlikely to be found, which establishes the mens rea component of the
crime.  See Tex. Penal Code Ann.
§ 20.01(2).  The Texas Court of Criminal Appeals has held that Aa kidnapping becomes a completed offense when (1) a
restraint is accomplished, and (2) there is evidence that the actor had the
specific intent to prevent liberation by secretion or the use or threatened use
of deadly force.@  Santellan v. State, 939
S.W.2d 155, 162 (Tex. Crim. App. 1997) (citing Mason v. State, 905
S.W.2d 570, 575 (Tex. Crim. App. 1995)).  Accordingly, the evidence was
sufficient to prove that Gonzales kidnapped Medina.

The evidence also supports that the
kidnapping was aggravated, based on Medina=s testimony that Gonzales told her
that he planned to rape and kill her.  This testimony established that the
abduction would Afacilitate the commission of a felony@ or that Gonzales intended to Ainflict bodily injury or violate or abuse [Medina]
sexually.@  Tex.
Penal Code Ann. § 20.04(a)(3), (4).  Although Gonzales adamantly denied
saying this, it was within the province of the jury to settle this conflicting
evidence.  See Tex. Code Crim.
Proc. Ann. art. 38.04; Beckham, 29 S.W.3d at 151; Laster,
175 S.W.3d at 522.  The jurors believed Medina=s
version of the facts over Gonzales=s, and we will not disturb this
finding.  








Gonzales also argues that he only had
his arm around Medina=s neck for about forty seconds, which
could not constitute a kidnapping.  However, time is irrelevant as the
definition of abduction Adoes not require that the victim be
held for any certain length of time.@  Sanders v. State, 605 S.W.2d
612, 614 (Tex. Crim. App. 1980).  Gonzales further asserts that he could not
have kidnapped Medina because he only moved her about forty to fifty yards from
the grassy short-cut to the dumpster.  However, distance is also irrelevant
because kidnapping is established when the prosecution shows the defendant=s Aspecific intent to prevent liberation
by secreting or holding the person.@  Laster, 275 S.W.3d at 521-22 (finding
that a defendant “kidnapped” a child when he grabbed the child=s arm but let go of it seconds later when an eyewitness
driver honked at him).

Viewing all of the evidence in a light
most favorable to the verdict, we determine that a rational trier of fact could
have found all of the essential elements of aggravated kidnapping beyond a
reasonable doubt.  See Jackson, 443 U.S. at 318-19.  Therefore,
the evidence is sufficient to support Gonzales’s conviction.  Jackson, 443
U.S. at 318-19; see Brooks, 2010 Tex. Crim. App. 1240, at *57.  We
overrule this issue.

III.  Release
in a Safe Place

A.        Applicable
Law








By his next issue, Gonzales also contends
that he proved by a preponderance of the evidence that he released Medina in a
safe place and therefore should be entitled to a lower punishment range.  As
noted earlier, A[a]t the punishment stage of trial,
the defendant may raise the issue as to whether he voluntarily released the
victim in a safe place.  If the defendant proves the issue in the affirmative
by a preponderance of the evidence, the offense is a felony of the second
degree.@  Tex.
Penal Code § 20.04(d).  The punishment range for a first-degree felony
is five to ninety-nine years in prison, while the range for a second-degree
felony is only two to twenty years.  Id. §§ 12.32(a), 12.33(a).  








To constitute a voluntary release, Athe release must have occurred in a place and manner
which realistically conveyed [to the complainant] that she was then freed from
captivity and in circumstances and surroundings wherein aid was readily
available.@  Harrell v. State, 65 S.W.3d
768, 772 (Tex. App.—Houston [14th Dist.] 2001, pet. ref=d); see Wiley v. State, 820 S.W.2d 401, 411 (Tex.
App.—Beaumont 1991, no writ) (A[A]n accused, in order to avail
himself of the mitigating effect of § 20.04(b), must have performed some overt
and affirmative act that brings home to the victim that he/she has been fully released
. . . .@).  To constitute a safe place, courts
consider the following factors:  (1) the remoteness of the location; (2) the
proximity of authorities or persons who could aid or assist; (3) the time of
day; (4) climactic conditions; (5) the condition of the victim; (6) the
character of the location or surrounding neighborhood; and (7) the victim=s familiarity with the location or surrounding
neighborhood.  Woods v. State, 301 S.W.3d 327, 331-32 (Tex. App.—Houston
[14th Dist.] 2009, no pet.); Lavarry v. State, 936 S.W.2d 690, 696 (Tex.
App.—Dallas 1996, pet. dism=d).  

B.        Analysis

Gonzales asserts that he released
Medina near the dumpster and did not chase her when she ran.  Instead, he Asimply took the beer and ran in the opposite direction.@  He further contends Medina was not injured when she ran
away, that the area from where she ran was not remote, and that she was
familiar with the location and the neighborhood because she lived nearby.  

Gonzales had the burden of proof to
show that he voluntarily released Medina, and the trial court as the factfinder
determined that he did not meet this burden.  Woods, 301 S.W.3d at 331
(citing Nolan v. State, 102 S.W.3d 231, 236-37 (Tex. App.—Houston [14th
Dist.] 2003, pet. ref=d).  In support of this finding, we
note that: (1) Gonzales forced Medina to a remote location behind a storage
building, which was dark and completely obscured from traffic; (2) there were
no persons in the area who could aid or assist Medina, as Medina testified that
she screamed several times for help and no one came to her aid; (3) the
abduction occurred at night; and (4) Medina tore her clothes and scratched her
arms and legs on a barbed-wire fence while fleeing.  Woods, 301 S.W.3d
327, 331-32; Lavarry, 936 S.W.2d at 696.  Importantly, we also note that
Gonzales’s written confession reveals that Medina “got loose from [Gonzales],”
not that he intentionally released her.  

We defer to the fact-finder as the
sole judge of the facts, the credibility of the witnesses, and the weight given
to testimony.  See Tex. Code
Crim. Proc. Ann. art. 38.04; Beckham, 29 S.W.3d at 151.  AIt is up to the factfinder to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.@  Laster, 175 S.W.3d at 522. 
In this case, the judge believed Medina=s version of the facts over Gonzales=s, and we will not disturb this finding.  See Brown v.
State, 98 S.W.3d 180, 188 (Tex. Crim. App. 2003).

Viewing all of the evidence in a light
most favorable to the verdict, we determine that a rational trier of fact could
have found that Gonzales did not release Medina in a safe place.  Laster,
275 S.W.3d at 517; see Jackson, 443 U.S. at 318-19.  Therefore, the evidence
is sufficient.  Jackson, 443 U.S. at 318-19; see Brooks, 2010
Tex. Crim. App. 1240 at *57.  We overrule this issue.

IV.  Conclusion

Having overruled all of Gonzales=s issues, we affirm the judgment of the trial court.                                                                                                                    

 

 

________________________

DORI CONTRERAS GARZA

Justice

 

Do
not publish.

Tex. R. App. P.
47.2(b)

Delivered
and filed the

16th
day of December, 2010.